Federico MUÑIZ NÚÑEZ, et
al., Plaintiffs,

v.

AMERICAN HOME PRODUCTS CORP.
and Ayerst Laboratories, Inc.,
Defendants.

Civ. No. 80–0670(JP).

United States District Court,
D. Puerto Rico.

Jan. 31, 1984.

Harvey B. Nachman, Santurce, P.R., for plaintiffs.

Francisco Agrait Oliveras, Agrait & Oliveras, Hato Rey, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

The defendants, Ayerst Laboratories, Inc., and American Home Products Corporation, have motioned the Court, after the presentation of the plaintiffs' case, for a directed verdict under Federal Rule 50(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff, Dr. Francisco Muñiz Núñez, alleged and proved that he was fifty-five years old in 1977, and that he had already suffered from ulcers and hypertension. He was prescribed a drug known as Inderal; a drug packaged by defendant, upon the onset of the hypertension finding in July 1977. On December 20, 1977, plaintiff had an episode of a disease known as Peyronie's disease. This disease is characterized by a sudden, unprovoked erection of the penis which causes pain and bending. His penis stayed bent until 1983, when surgery was performed and flexible plastic rods were inserted in order to straighten the penis thus allowing full penetration during sexual intercourse. Sometime in January 9, 1978, plaintiff suffered a heart attack which incapacitated him and for which incapacity he received 100% benefits from the State Insurance Fund (Workmen's Compensation) as a finding was made that his heart attack was related to his work as a doctor in a state hospital.

Plaintiff alleges in this suit that his Peyronie's disease was caused by the drug Inderal, and that the defendants had a legal duty to include in the warnings which are contained in the package insert, the fact that it had been reported that three (3) patients using Inderal had suffered from Peyronie's disease as published in medical letters. It is accepted that medical letters dated May 1977, July 1977, and November 1977, have so reported this and such was of the knowledge of defendants herein.

The evidence pertaining to the relationship between Inderal and Peyronie's disease was developed by the plaintiff's expert witnesses to the following extent: Peyronie's disease has been known in the world for over 240 years. It was first reported by a French doctor in the Court of King Louis XIV, Dr. Francois de la Peyronie. The disease is a condition of unknown etiology. Nobody knows what causes the disease. It is described by the expert witnesses as the development of plaques or masses in the base of the penis and results in a deformity of the penis.

The plaintiffs presented the testimony of Dr. Roberto Francisco Fortuño, an urologist and plaintiff's treating physician for Peyronie's disease, who testified that no one knows the cause of Peyronie's disease. At no time did Dr. Fortuño state that defendant's product, Inderal, caused plaintiff's Peyronie's disease. The doctor testified that this condition occurs in males over the age of fifty and mostly in males with hypertension, infections, a history of venereal disease, vascular problems, or those who experienced trauma in sex. The second witness, Dr. Eleuterio Loperena, a cardiologist, also testified that the cause of Peyronie's disease is unknown as did Doctor Brice, an M.D. who is Director of Medical Administration for Ayerst Laboratories, who was called as an adverse witness.

All the doctors testified that there is a possibility that Inderal may cause Peyronie's disease only because the occurrence of said disease has been reported in three patients subject to Inderal, but for no other reasons. Thus, none of the expert witnesses could say that it was probable that Inderal, as a matter of fact, causes Peyronie's disease. In addition, no expert for the plaintiff testified that the Peyronie's disease suffered by plaintiff was caused by Inderal, or even that it was more likely caused by Inderal.

When the defendants, after the plaintiffs rested their case, moved for a directed verdict, what they are in fact alleging is that accepting all of the facts presented by the plaintiff as true, there is still no cause of action against them and a judgment dismissing the complaint is proper.

## CONCLUSIONS OF LAW

In seeking a directed verdict under Rule 50, the defendants allege that the plaintiff has failed to present any evidence linking his injury to defendant's product. That is to say, that the plaintiff has failed to show that: (1) the ingestion of Inderal causes Peyronie's disease, and (2) that in his case the drug Inderal caused the Peyronie's disease he is suffering from. Defendants argue that the plaintiff's must establish the

case on a theory of probability and *not* possibility, that in this case, there is no evidence of probability, so that this lack of sufficient evidence entitles them to a directed verdict as a matter of law.

The standard set by the First Circuit for this Court to entertain a motion for directed verdict and remove issues from the jury has been outlined in *Roche v. New Hampshire National Bank*, 192 F.2d 203 (1st Cir., 1951), which states that whether the evidence is sufficient to create an issue of fact to the jury is solely a question of law to be determined by the Court.

The First Circuit has following this in *Liberty Leather Corp. v. Callum*, 653 F.2d 694 (1st Cir., 1981), announcing that when the evidence is such that without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict, a directed verdict is proper. Therefore, the trial judge must decide as a matter of law whether there exists sufficient evidence for the jury as a "scintilla of evidence is not enough to warrant submission of an issue to the jury." *Trinidad v. Pan American Airways, Inc.*, 575 F.2d 983 (1st Cir., 1978), quoting *Federal Insurance Co. v. Summers*, 403 F.2d 971, 974 (1st Cir., 1968).

The issue of causation, even in cases where liability is perfectly strict, requires the plaintiff to satisfy the burden of establishing that the particular defendant has sold a product which he should not have sold and that it caused his injury. *Basko v. Sterling Drugs, Inc.*, 416 F.2d 417 (2nd Cir., 1969). In the case at bar, plaintiff did not introduce any documentary or expert testimonial evidence showing the cause of Peyronie's disease, nor any evidence that the Peyronie's disease suffered by plaintiff was caused by the taking of Inderal. The plaintiff argues against the movant's motion for directed verdict by stating that causation between the taking of Inderal and plaintiff's Peyronie's disease is established between the administration of the drug, the adverse reaction and the inadequacy of the labeling. Plaintiff invites the Court's attention to *Brochu v.*

*Ortho Pharmaceuticals Corp.*, 642 F.2d 652, 659 (1st Cir., 1981), for the proposition, as he interprets it, that: (1) the absence of proper warning itself renders a product unreasonably dangerous; and (2) that the failure to warn adequately is a proximate cause of plaintiff's use of Inderal since plaintiff would not have taken the risk of Peyronie's disease had he been warned, and therefore, plaintiff concludes that causation is established without further evidence. The Court holds that such rationale is contrary to law.

In order to understand the logical approach to the consideration of a motion for directed verdict in relation with an evaluation of plaintiff's reasoning, the Court must look to the evidence as a whole before deciding whether there was a failure to warn. If there is no evidence of the relationship between cause and effect then one cannot reach the conclusion that independently of said fact there was a failure to warn. Under such circumstances the only course is to find that as a matter of law the plaintiff did not prove the case and a directed verdict for defendant is proper.

The Court cannot pass upon the question of sufficiency of evidence in a piecemeal fashion, without tying one issue with the other issues. We cannot decide whether there was a failure to warn just examining the evidence strictly concerning the package inserts. The Court must, together with such evidence, examine all facts pertaining to the cause and effect of the drug, the disease and the illness suffered by the plaintiff herein. If there exists no legal relation of cause and effect in any of these steps, plaintiff cannot recover as a matter of law and the Court must order a directed verdict since there is no question of fact for the jury to decide.

Plaintiff contends that Inderal is inherently dangerous since there was no warning. A product which is inherently dangerous (e.g. vaccine for polio treatment where the disease itself may lead to death), but necessary, when correctly prepared and accompanied by proper directions and

462

warnings, is not defective nor unreasonably dangerous. "A seller who has reason to believe that danger may result from a particular use of his product must provide an adequate warning", *Brochu, supra,* commenting on *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir., 1974). "Failure to warn in such circumstances constitutes a defect in the product, making it unreasonably dangerous as marketed." *Brochu, supra.* An adequate warning is one reasonable under the circumstances, *Sterling Drug, Inc. v. Yarrow,* 408 F.2d 978 (8th Cir., 1969), and the adequacy of the warning must be judged in the light of what defendant knew at the time plaintiff took Inderal. It is axiomatic that one cannot warn a party of a danger one does not know about. The only evidence before the Court is that there is the possibility that Inderal may cause Peyronie's disease because of the letters referred to before. This does not mean that, in the absence of evidence to the effect that the drug at least probably caused the affliction, a verdict for the plaintiffs is a matter for the jury. On the contrary, under such circumstances, as a matter of law, a verdict for the defendant must be directed by the Court. The case of *Chambers v. G.D. Searle & Co.,* 441 F.Supp. 377 (D.Md.1975), cited with approval in *Brochu,* at 658, stands for this proposition as the rule of law is that a plaintiff in a defective design case must prove that the unreasonably dangerous condition existed when the product was purchased and that this condition caused the injury.

■ To prove that the product was unreasonably dangerous, the evidence must show a relation of cause and effect. The evidence must demonstrate that the drug causes the Peyronie's disease; this, the plaintiff has failed to prove. Furthermore, the plaintiff must show that the drug caused his illness. "Finally the Brochu's had to prove that this ovral contraceptive was the cause-in-fact of Mrs. Brochu's stroke." *Brochu,* at 660. In the case at bar, the experts never rendered an opinion that the drug caused or most likely caused the plaintiff's disease. Proof of causation

is essential and Professor William Prosser comments as follows:

On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

W. Prosser, *Law of Torts,* § 41, (4 Ed., 1971).

■ The burden rests on plaintiff to prove the facts crucial to his case, especially causation. "That the defendants' negligence could possibly have been the cause, is not sufficient; the proof must be sufficient to raise a reasonable inference that the negligence complained of was the proximate cause of the injury." *Rexall Drug Co. v. Nihill,* 276 F.2d 637, 664 (9th Cir., 1960).

In *Brochu, supra,* at 660, Dr. Merwyn Bagan, a Board-certified neurologist, Dr. John H. Altshuler, Board-certified in Anatomic and Clinical Pathology and Immunohematology, and Dr. Wendel, testified that the most likely cause of Mrs. Brochu's thrombosis was her ingestion of oral contraceptives. The experts testified that the plaintiff's stroke was causally related to defendant's drug. They stated that most likely the cause of Mrs. Brochu's thrombosis was her ingestion of oral contraceptives. In the case at bar, there is no causal relationship as established by the experts for plaintiffs; on the contrary, they have stated, based on the facts of some publications reporting patients' experiencing Peyronie's disease while receiving Inderal, that they cannot state the cause of the disease and only arrive at the conclusion that Inderal was the cause of the disease is at best possible, and no more. In *Brochu,* the

doctors stated that the most likely cause of plaintiff's thrombosis was her ingestion of oral contraceptives. That evidence is inexistent in the case at bar.

Different to the case at bar, the research in *Brochu* found a "positive correlation" between the dose of estrogen and the risk of cerebral thrombosis. 'In the case at bar, no expert testified as to a positive correlation between Inderal and Peyronie's disease.

The present case is similar to *Chambers v. Searle, supra,* where there was only some medical information available. In *Chambers,* the Court properly granted a directed verdict for lack of proof of cause and effect.

█ In the case at bar, the Court finds that plaintiff has not produced sufficient evidence to satisfy the causation requirement and therefore, has not created an issue of fact to go to the jury. Applying the law to the undisputed facts presented by plaintiff, the complaint is hereby DISMISSED and the Court hereby GRANTS the defendants' motion for directed verdict.

IT IS SO ORDERED.