Vincent INSOLIA and Karen Insolia, Billy Mays and Phyllis Mays and Lee Lovejoy, Plaintiffs,

and

Physicians Plus Insurance Corporation, Party joined pursuant Wis. Stat. § 803.03

v.

PHILIP MORRIS INCORPORATED; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; Liggett Group, Inc.; The Council for Tobacco Research—U.S.A., Inc.; and The Tobacco Institute, Inc., Defendants.

No. 97–C–0347–C.

United States District Court, W.D. Wisconsin.

Dec. 20, 2000.

James A. Olson, Lawton & Cates, S.C., Madison, WI, for Insolia, Karen Insolia, Vincent.

Richard L. Schmidt, Boardman, Suhr, Curry & Field, Madison, WI, for Physicians Plus Ins.

Michael T. Graham, Jackson, Lewis, Schnitzler and Krupman, Chicago, IL, for Associates' Health and Welfare.

Mullen J. Dowdal, Asst U.S. Attorney, Madison, WI, for Shalala, Donna.

Michael L. Zaleski, Quarles & Brady, Madison, WI, for Philip Morris Incorporated.

James R. Clark, Foley & Lardner, Milwaukee, WI, for R.J. Reynolds Tobacco Company.

Michael P. Crooks, Peterson, Johnson, & Murray, S.C., Madison, WI, for Brown & Williamson Tobacco Corp.

Bruce A. Schultz, Attorney at Law, Madison, WI, for Lorillard Tobacco Company.

Robert B. Raschke, Lindquist & Vennum, Minneapolis, MN, for Liggett Group Inc.

John H. Schmid, Axley Brynelson, Madison, WI, for the Council for Tobacco Research.

John Koeppl, Attorney at Law, Madison, WI, for the Tobacco Institute, Inc.

## OPINION AND ORDER

CRABB, District Judge.

This civil suit for monetary relief was filed by persons seeking damages for injuries suffered as a result of smoking cigarettes. It is before the court after having been dismissed, appealed and remanded.

In an order entered in May 1999, I granted defendants' motion for summary judgment on all but one of the many claims raised by plaintiffs in their complaint, which fell into the categories of negligence, negligence per se (strict liability), intentional exposure to a hazardous substance and conspiracy. Shortly thereafter, the parties stipulated to dismissal of the one remaining claim and I entered final judgment on the entire suit. Plaintiffs appealed. The Court of Appeals for the Seventh Circuit upheld the grant of summary judgment in large part, but concluded that it was error to grant judgment to defendants on plaintiffs' claims of ordinary negligence. *See Insolia v. Philip Morris Inc.*, 216 F.3d 596, 604 (7th Cir. 2000). The court agreed that plaintiffs could not make out a claim of strict liability because they were unable to show that tobacco products were " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.' " *Id.* at 599 (quoting *Restatement (Second) of Torts* § 402A, cmt. i). The court recognized that Wisconsin courts would find liable persons who sell unreasonably dangerous products, but it held that cigarettes did not fall into that category. It agreed with my conclusion that the ordinary consumer of cigarettes would have recognized in 1935 and afterward that smoking cigarettes was harmful to health and habit forming. *See id.* at 603. The court rejected plaintiffs' argument that consumers cannot be said to appreciate the full danger of cigarettes unless they know they are not merely habit forming but *addictive.*

After reaching the conclusion that cigarettes were not an unreasonably dangerous product, the court of appeals explained why the consumer contemplation test did not apply to claims of ordinary negligence. "[N]egligence per se [strict liability] is

about effect, while negligence is about conduct leading to that effect. Negligence—unlike negligence per se—requires proving foreseeability." *Id.* at 604. The court made the point that a defendant could be found negligent but not negligent per se. "'[T]here may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402A sense.'" (quoting *Greiten v. LaDow*, 70 Wis.2d 589, 603, 235 N.W.2d 677, 685 (1975)). Finding that plaintiffs' negligence claim "revolves around the tobacco companies' conduct in producing cigarettes," *id.* at 604, 235 N.W.2d 677, the court held that the claim of ordinary negligence should go to the jury.

Defendants have now moved for judgment on the pleadings, contending that as a matter of law plaintiffs have no viable claims of negligence. Oral argument was held on the motion on December 14, 2000. One might think defendants' motion frivolous in light of the court of appeals' decision. Plaintiffs do; they assert that defendants' motion is barred by the law of the case doctrine, which prohibits re-argument of issues that have been decided in the same case, and is based on the sound public policy that litigation should come to an end. "The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). Defendants agree that the law of the case prohibits re-visiting an issue that has been decided. Their contention is that the court of appeals never reached the precise issue they believe plaintiffs are raising, which is that defendants should be held liable merely for continuing to manufacture and sell a product they knew was dangerous.

At oral argument in this court, plaintiffs disavowed any argument that defendants could be found negligent solely because they continued to sell and manufacture tobacco products. Indeed, plaintiffs maintained that they had never made such an argument. This latter assertion is puzzling in light of the arguments they made in their appellate brief and in their brief in opposition to the present motion. For example, plaintiffs state at page 10 of their brief in opposition, dkt. # 391, that once defendants appreciated the dangers of cigarettes, "they could have quit selling cigarettes." *See also id.* at 11 ("The Defendants failed to use reasonable care by continuing to manufacture a product that was addicting and...."); Pls Appellants' Initial Br. at 14 ("The evidence establishes that defendants reasonably foresaw both the addiction and the lung cancer yet continued to market and sell cigarettes....") Indeed, my understanding that this was the core of plaintiffs' claim of ordinary negligence underlay the statements in my order granting summary judgment to the effect that plaintiffs' negligent manufacture and negligent marketing claims fit squarely within the negligence per se category. *See Insolia*, 53 F.Supp.2d at 1039 (plaintiffs are alleging that "defendants breached a duty of care to plaintiffs by manufacturing and marketing an unreasonably dangerous and defective product").

It is prudent for plaintiffs to abandon their argument that a seller or manufacturer could be found negligent simply for continuing to sell and manufacture a dangerous product. First, I am persuaded that the court of appeals did not hold that such an assertion would state a claim. Although there is language in the opinion that suggests it did, *see Insolia*, 216 F.3d at 604–05 ("The plaintiffs argue that by going forward with the product despite that knowledge [of its harmful properties], the tobacco companies breached their duty of ordinary care and thus are liable for negligence."), closer examination reveals that the court of appeals never gave express consideration to the question whether plaintiffs could state a claim of negligence without alleging some specific fault "during the process." *Id.* at 605. Implicit in the court of appeals' decision is its assumption that plaintiffs' negligence claim rests on allegations of fault. *See id.*

("[Plaintiffs'] negligence theory that the defendants were *at fault during the process* is independent of their strict liability claim regarding the final result." (emphasis added). *See also id.* ("Throughout the [district court's] opinion, the plaintiffs' negligence claim is consistently called a 'negligence' claim. The former smokers' claim of negligent design and manufacture in this case is analogous to the . . . plaintiffs' negligence claim [in *Howes v. Deere & Co.*, 71 Wis.2d 268, 238 N.W.2d 76 (1976)], not to their strict liability claim.")). In *Howes*, the plaintiffs had alleged that the defendant had both manufactured and sold an unreasonably dangerous riding mower and had been negligent in designing and manufacturing the mower with an inadequately guarded blade and negligent in other specific respects. The supreme court held that the trial court erred when it required the plaintiffs to choose between their two theories, negligence per se and ordinary negligence.

The court of appeals' citation to *Howes* is evidence of its assumption that plaintiffs' negligence claim rested on specific allegations of lack of ordinary care at some stage of the manufacturing and marketing stages. Had the court understood plaintiffs' claim as resting solely on their allegation that defendants knew they were manufacturing and selling a product that was *not* dangerous beyond the contemplation of the ordinary consumer, the court would not have held that the claim could go to the jury without explaining its justification for working such a sea change in the common law of torts. To use an analogy: it would be commonplace for a court to allow a jury to decide the negligence of a manufacturer that made a knife that fractured unexpectedly under ordinary use; it would be unprecedented to allow a jury to decide the negligence of a manufacturer whose knives worked exactly as an ordinary consumer would expect and whose alleged fault was solely that the plaintiff had been cut while using the knife.

Furthermore, in its opinion in *Insolia*, the court of appeals considered the viability of another claim asserted by plaintiffs that was based on intentional exposure to a hazardous substance. In asserting this claim, plaintiffs acknowledged that the Wisconsin courts had never recognized such a tort and asked the court of appeals to do so or, in the alternative, to certify to the state supreme court the question whether Wisconsin courts would recognize such a claim. The court of appeals refused to do either. It found little indication in existing law that the Wisconsin courts would recognize such a tort and it was unwilling to use the certification process for a tort that was "creative but unlikely." *Insolia*, 216 F.3d at 607. The court's detailed treatment of the intentional exposure tort is strong evidence that it never ruled, explicitly or by implication, that plaintiffs could state a viable claim by alleging merely that defendants were negligent for continuing to make and sell a dangerous but legal product. Certainly, the court would have explained why it was taking the extraordinary step of holding that liability could be imposed upon anyone who made or sold a product that was dangerous, regardless of fault in the process.

█ As plaintiffs are well aware, a claim of negligence based on continued sales of a product recognized as dangerous would be entirely novel. Federal courts sitting in diversity cases are not in a position to recognize a plaintiff's novel cause of action, even when the plaintiff is not responsible for the choice of the federal court as the forum. *See Insolia*, 216 F.3d at 607 (citing *Railway Express Agency, Inc. v. Super Scale Models, Ltd.*, 934 F.2d 135, 138 (7th Cir.1991)).

█ There is a second reason why plaintiffs would be ill advised to pursue a claim of negligence for otherwise faultless sale or manufacture. A holding to that effect would run afoul of the congressional policy that the sale of cigarettes is legal. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S.Ct. 1291, 1303, 146 L.Ed.2d 121 (2000) ("Congress, however, has foreclosed the removal of tobacco

products from the market.") If Congress gives express sanction to an activity, the states cannot declare that activity tortious. *See Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 1926, 146 L.Ed.2d 914 (2000) (allowing state court jury to find car manufacturer liable for failing to install air bag would create irreconcilable conflict with federal regulation giving manufacturers choice about installing air bags and "would stand as an 'obstacle' to the accomplishment of [the federal] objective").

On this point plaintiffs argue that nothing Congress has said would prohibit a state from allowing a common law tort action, with the limited exception of a suit based on state law purporting to regulate cigarette advertising and promotion. They cite *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in which the Supreme Court held that the only common law tort action preempted by the Public Health Cigarette Smoking Act of 1969 is one that alleges negligence claims covered expressly by Section 5(b) of that act, which provides that states could not require or prohibit any aspect of the advertising or promotion of any cigarettes sold in lawfully labeled packages. Other than in this one narrowly defined area, plaintiffs argue, federal laws on cigarettes do not preempt state laws. In *Brown & Williamson,* 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121, for example, the Court referred to at least four other federal laws regulating smoking that had been passed since *Cipollone* was decided, none of which preempted any common law tort causes of action.

However, *Geier,* 120 S.Ct. 1913, holds that "conflict preemption" may exist even when there is no federal law or regulation that works an express preemption of state law. The Court found from its analysis of Federal Motor Vehicle Safety Standard 208, promulgated in 1984 pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, that the federal government had made a considered decision to make the use of air bags optional for a number of valid reasons, such as winning widespread consumer acceptance and encouraging technological development. The Court held that it would conflict with the government's policy choices to allow tort suits against automobile manufacturers for their failure to install air bags when their decisions had been made in compliance with that policy. In reaching that decision, the Court rejected the defendant's argument that Safety Standard 208 expressly preempted such suits. The Court observed that the act itself contained a savings clause that provided that compliance with a federal safety standard did not "exempt any person from any liability under common law" and concluded that this clause would allow tort actions based on a failure to install an air bag. Only "conflict preemption" barred such actions and only because the Court determined that allowing common law actions would undermine achievement of the objectives incorporated into Safety Standard 208.

■ Plaintiffs are correct that there is no law or regulation that preempts their claim that it is actionable negligence for defendants to continue to manufacture and sell cigarettes once they realized the danger that cigarettes posed. What preempts their claim is Congress's considered decision that the sale of cigarettes is not only not illegal but part of a market the government supports. *See, e.g.,* 7 U.S.C. § 1311(a) ("The marketing of tobacco constitutes one of the greatest basic industries of the United States with ramifying activities which directly affect interstate and foreign commerce at every point, and stable conditions therein are necessary to the general welfare.") (quoted in *Brown & Williamson,* 120 S.Ct. at 1303). *See also* 15 U.S.C. § 1331 (expressing intent to establish comprehensive federal program to deal with cigarette labeling and advertising while at the same time protecting commerce and the national economy "to the maximum extent possible") (quoted in *id.* at 1304). Just as it would have interfered with the federal government's policy on air bags to allow state tort actions against automobile manufacturers who relied on the safety standard to omit air bags from

their vehicles, allowing tort actions against cigarette manufacturers and sellers for the allegedly negligent act of continuing to make and sell cigarettes would interfere with Congress's policy in favor of keeping cigarettes on the market.

This discussion may have been unnecessary now that plaintiffs have disavowed any intention to pursue a claim of negligence that rests on nothing more than the continued sale and manufacture of a dangerous product without any allegation of fault in the manufacturing or selling process. I have included it so as to avoid any subsequent question on the issue.

At oral argument, plaintiffs represented to the court that they intend to pursue only two claims of negligence: 1) defendants were at fault in failing to warn potential smokers before 1969 of the dangers of smoking; and 2) defendants were at fault in failing to design a cigarette that did not pose the dangers of the products they were selling. From plaintiffs' explicit representation that they are not pursuing any other claims, I conclude that they have abandoned the claims of negligence they discussed in their brief in opposition to the present motion, which were that 1) defendants failed to use due care when they conspired to create doubt about the danger and addictive nature of cigarette smoking; 2) defendants manipulated the levels of nicotine to increase the likelihood of addiction; 3) defendants failed to provide consumers with assistance to reduce the danger of the product and failed to do anything to reduce the risk of addiction, such as assisting customers to overcome addiction or reducing consumption by minors; and 4) defendants failed to prevent minors from buying cigarettes.

Plaintiffs contend that they are entitled to assert a failure to warn claim in spite of the fact that I granted defendants summary judgment on such a claim in an order entered on May 19, 1999, and they never appealed that decision. They are wrong. The 1999 ruling constitutes the law of the case, which is that plaintiffs cannot prove that any failure to warn by defendants was a causal factor in their decisions to continue smoking. *See Insolia*, 53 F.Supp.2d at 1045.

In their statements at the oral argument, plaintiffs seemed to suggest that they want to argue that one of the ways in which defendants were negligent is in failing to give warnings adequate to prevent plaintiffs from starting to smoke. This would be an entirely new claim, never before identified by plaintiffs. (If it were not new, plaintiffs would have either asked this court for reconsideration of the decision to dismiss the negligent failure to warn claim or raised the issue on appeal. The fact that plaintiffs said nothing about it shows that plaintiffs viewed the failure to warn claim in the same way as I did, as relating to their failure to *stop* smoking.) Because the failure to warn claim has been the subject of discovery and summary judgment, I will not allow plaintiffs to raise it in a new form.

Throughout this case, plaintiffs have been reconfiguring their theories of recovery. Their abandonment of the "continuing to sell a dangerous product" theory is one example; another was their effort during the briefing on summary judgment to change their claim from on in which they alleged that defendants defrauded them directly to a claim in which they alleged that defendants defrauded the public health community, which resulted in injury to plaintiffs because the public health community did not understand the addictive nature of smoking and consequently failed to create smoking cessation products. I refused to allow this transformation of a claim, *see Insolia*, 53 F.Supp.2d at 1045, and the court of appeals affirmed the refusal. *See Insolia*, 216 F.3d at 606.

Plaintiffs have now advised the court that they intend to argue that defendants were negligent in the design of cigarette products because they failed to develop products that were less addictive and less harmful to health. This is the first appearance of this claim. In the second amended complaint, plaintiffs alleged that defendants were negligent in four re-

spects: manufacturing, marketing, failure to warn of the dangers of smoking and failure to provide adequate information regarding the addictive nature of cigarettes. They said nothing about negligent design. However, they did make two references to defendants' failure to develop a safer product in paragraphs 44 and 45 of their complaint, where they alleged that

> 44. Several tobacco companies were successful in discovering which constituents in tobacco smoke were carcinogens, or were otherwise linked to diseases. This research was kept secret and never reported to the public.

> 45. A number of companies also successfully removed certain harmful constituents from cigarette smoke or treated the product to decrease the harmful effects of such constituents, and developed prototype cigarettes with reduced adverse health effects. These products were never marketed.

Plaintiffs argue that these two paragraphs should have provided notice to defendants that plaintiffs were alleging negligence in the design of cigarettes. However, in light of the absence of any allegation of negligent design in the section of the complaint entitled "First Claim—Negligence," the references to conspiracy in paragraphs 44 and 45, which mesh with the allegations in their "Fourth Claim—Civil Conspiracy," and the lack of any mention of a claim of negligent design in any pleading or brief (including plaintiffs' appellate brief), it is not surprising that neither this court nor defendants understood until the December 14, 2000 oral argument that plaintiffs were making such a claim.

Although there are good reasons for denying plaintiffs' effort to turn their suit in an entirely new direction, I am concerned that doing so would thwart the court of appeals' understanding that plaintiffs had made out a claim of negligent design and the court's decision that plaintiffs should have a chance to try their claim. *See Insolia*, 216 F.3d at 605 ("The former smokers' claim of *negligent design* and

manufacture in this case is analogous to the *Hawes'* plaintiffs' negligence claim . . . .") and at 604 ("The plaintiffs contend that while *designing*, manufacturing, marketing, and selling cigarettes, the defendants could foresee that cigarettes were addictive and cause cancer.") (Emphases added.) Therefore, I will allow plaintiffs to proceed on their new theory, provided that they file a new complaint, limited to the one theory on which they will be allowed to proceed. This will be plaintiffs' last chance to amend their complaint. I will entertain no additional motions to amend.

I should note that I have conceptual difficulties with the new claim. In part, I have the sense that plaintiffs will be arguing that defendants should have designed a different product. Returning to the knife analogy, that might be like holding that a knife maker could avoid liability only by designing and manufacturing a rubber knife. I am aware of no cases holding that a manufacturer has any duty to produce an entirely new product simply because its present product is dangerous, so long as it is not unreasonably dangerous. It may be, however, that plaintiffs can show that defendants could have designed and manufactured a product that was still the essence of a cigarette but that eliminated the harmful aspects of smoking. My second concern is whether plaintiffs can prove causation, that is, whether they can show that if defendants had designed a safer and non-addictive product, plaintiffs would have smoked it rather than continuing to use the harmful and addictive products that allegedly caused their illnesses. As plaintiffs' counsel noted at oral argument, a number of low tar, reduced nicotine products have been introduced over the last forty years. I am not aware that any of them has engendered much enthusiasm among consumers. However, these are matters to be explored in discovery and at trial.

## ORDER

IT IS ORDERED that the motion of defendants Philip Morris Incorporated,

R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, Liggett Group, Inc., The Council for Tobacco Research—U.S.A., Inc. and the Tobacco Institute, Inc. is GRANTED with respect to the second amended complaint filed by plaintiffs on July 9, 1998. However, plaintiffs Vincent Insolia and Karen Insolia, Billy Mays and Phyllis Mays and Lee Lovejoy may have until January 12, 2001, in which to file and serve a third amended complaint setting forth their claim that defendants were negligent in failing to design a cigarette product that was non-addictive and less harmful to health. Defendants may have until February 2, 2001, in which to file and serve responses to the amended complaint. FURTHER, IT IS ORDERED that all deadlines previously set in this case are RESCINDED. A scheduling conference will be held before United States Magistrate Judge Stephen L. Crocker by telephone on February 8, 2001 at 11:00 a.m. Counsel for plaintiffs shall initiate the conference call.