**Irene CRUZ VARGAS, individually and as next-of-friend and natural guardian of Eli Rogelio Figueroa Cruz, and Luis Rogelio Figueroa Cruz, Plaintiffs,**

v.

**R.J. REYNOLDS TOBACCO COMPANY; R.J.R. Nabisco, Inc.; Nabisco Group Holdings, Defendants.**

No. 00CV2334.

United States District Court, D. Puerto Rico.

June 28, 2002.

Amarilys Arocho–Maldonado, Utuado, PR, Herbert Muriel St. Thomas, VI, Archie Jennings, St. Thomas, VI, for plaintiffs.

Salvador Antonetti–Zequeira, Rosalie Irizarry–Silvestrini, Fiddler, Gonzalez & Rodriguez, San Juan, PR, L. Christine Buchanan, John M. Walker, Atlanta, GA, Diane G. Pulley, James R. Johnson, Atlanta, GA, for defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Irene Cruz Vargas ("Cruz"), Eli Rogelio Figueroa Cruz, and Luis Rogelio Figueroa Cruz bring the present diversity action against Defendants, R.J. Reynolds' Tobacco Company ("Reynolds"), R.J.R. Nabisco, Inc. ("R.J.R.Nabisco"), and Nabisco Group Holdings ("Nabisco Holdings"). *Docket Document No. 25.* Plaintiffs seek compensatory damages, attorney fees, and other costs. *Id.*

·Plaintiffs and Defendant Reynolds file cross-motions for summary judgment and respective opposition motions. *Docket Document Nos. 54, 64, 69, 77.*

## I.

### Factual and Procedural History

Unless otherwise indicated, we derive the following factual summary from the statements of uncontested facts submitted by the parties in their summary judgment and opposition motions. *Docket Document Nos. 54, 64, 69, 77.*

Plaintiff Cruz is a resident of Puerto Rico and is the widow of Luis Rogelio Figueroa Serrano ("decedent"), who died on October 18, 1999. Plaintiffs Eli Rogelio Figueroa Cruz and Luis Rogelio Figueroa Cruz are the sons of Plaintiff Cruz and the decedent, and both are residents of Puerto Rico. *Docket Document No. 25.*

Defendant Reynolds is a New Jersey corporation with its principal place of business in North Carolina. *Id.* Defendant Reynolds designs, manufactures, and sells cigarettes, including Winston cigarettes, in Puerto Rico. *Id.* Defendant R.J.R. Nabisco is a Delaware corporation with its principal place of business in New York. Defendant R.J.R. Nabisco is the parent company of Defendant Reynolds. *Id.* Defendant Nabisco Holdings is corporation incorporated under the law of Delaware with its principal place of business outside of Puerto Rico. *Id.*

The decedent was born on August 28, 1951, and lived in Utuado, Puerto Rico his entire life. He worked as a mechanic, tow truck driver, and a public taxi driver. His primary language was Spanish. The decedent did not read newspapers or magazines and did not watch television. He could not read, write, or speak English.

The decedent attended the Juan Ponce de Leon school from 1968 to 1971. He began smoking Winston cigarettes during high school. Plaintiffs contend that the decedent began smoking as early as 1968. *Docket Document No. 77.* Defendant Reynolds maintains that the decedent did not begin to smoke until 1970. *Docket*

*Document No. 54.* By the time he was twenty-six years old, the decedent was smoking at least two packs of cigarettes a day. The decedent continued to smoke two or three packs of Winston cigarettes a day until he died on October 18, 1999.

Beginning in 1994 or 1995, the decedent was diagnosed with hypertension. The severity of his illness is disputed by the parties. *See Docket Document Nos. 54, 77.* The decedent's medical records indicate that he did not consistently: take his hypertension medicine, participate in diagnostic testing, follow dietary instructions, or attend medical appointments. *Docket Document No. 54.* However, Plaintiff Cruz attests that she supervised the decedent's medication intake, dietary habits, and other medical instructions to ensure the decedent's compliance. *Docket Document No. 77.*

In 1993 or 1994, the decedent's physician told him that smoking was affecting his health. In 1995 or 1996, the decedent's doctors informed him that his high blood pressure was related to smoking and that smoking exacerbated the high blood pressure.

Plaintiff Cruz discussed the health risks of smoking with the decedent more than nineteen years before he died.

Plaintiffs admit that they believed that the decedent was addicted to smoking for at least a year before he died.

The decedent passed away suddenly on October 18, 1999. On the date of his death, the decedent was forty-eight years old. No autopsy was performed.

Defendant Reynolds contends that other factors, besides smoking, were substantial contributing factors in the decedent's illness and death. These factors include: obesity, noncompliance with medical treatment, uncontrolled hypertension, family history of hypertension, possible renal

stenosis, and possible pheochromocytoma. *Docket Document No. 54.*

Plaintiffs maintain that the decedent's smoking caused and aggravated his hypertension, and that smoking was as much as thirty percent responsible for his death. *Docket Document No. 77.* They also argue that pheochromocytoma and renal stenosis did not cause the decedent's death. *Id.*

Plaintiffs filed the initial complaint on October 17, 2000, *Docket Document No. 1,* and submitted an amended complaint on August 20, 2001. *Docket Document No. 25.* Plaintiffs' complaint alleges state law negligence and strict liability claims pursuant to 31 L.P.R.A. § 5141 (1991 & Supp. I 1998). *Id.* Specifically, Plaintiffs aver that Defendant Reynolds' cigarettes are defectively designed, because they cause addiction, hypertension, and death. *Id.* Plaintiffs also assert that the health warnings on Defendant Reynolds' cigarette packages are inadequate, and that Defendant Reynolds had a duty to print Spanish health warnings on cigarette packages sold in Puerto Rico. *Id.*

Defendant Reynolds filed a motion for summary judgment on May 1, 2002, asserting that: (1) Plaintiffs' failure to warn claims are preempted by the Federal Cigarette Labeling and Advertising Act ("the Labeling Act"), 15 U.S.C §§ 1331–1341 (1994 & Supp. I 2001); (2) Plaintiffs' negligence and strict liability claims are preempted pursuant to the doctrine of conflict preemption; (3) Defendant Reynolds' cigarettes were not a proximate cause of the decedent's illness or death; (4) Defendant Reynolds' cigarettes are not defective under Puerto Rico law; and (5) Plaintiffs Cruz and Luis Rogelio Figueroa Cruz's claims are time-barred. *Docket Document No. 54.* Plaintiffs filed an opposition to Defendant's motion on June 7, 2002. *Docket Document No. 77.*

On May 7, 2002, Plaintiffs filed a motion for partial summary judgment on the ground that Defendant Reynolds had an obligation to include Spanish warnings on cigarette packages sold in Puerto Rico. *Docket Document No. 64.* Defendant Reynolds tendered an opposition on May 21, 2002.

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX*

*Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodri-*

*guez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

#### A. *Statute of Limitations*

Defendant Reynolds contends that Plaintiffs Cruz and Luis Rogelio Figueroa Cruz' claims are time-barred because the statute of limitations began to run when they first learned that the decedent's health conditions were related to smoking. *Docket Document No. 54.* Defendant Reynolds acknowledges that Plaintiff Eli Rogelio Figueroa Cruz' claims are not time-barred because he is a minor and the statute of limitations is tolled until he reaches the age of majority. *See* 32 L.P.R.A. § 254 (1990).[1]

Plaintiffs maintain that the statute of limitations did not begin to run until the decedent died on October 18, 1999, and that since they filed the present action within one year of the decedent's death, their action is timely.

The statute of limitations governing an action filed under 31 L.P.R.A. § 5141 is one year "from the time the aggrieved person had knowledge" of the injury. 31 L.P.R.A. § 5298(2) (1991 & Supp. I 1998). Pursuant to this rule, "the period of a cause of action begins to run as of the moment the aggrieved party learned or had knowledge of the damage and could institute the action." *Sánchez v. Autoridqd de Energia Electrica,* 142 D.P.R. 880, 1997 P.R.Eng. 878520 (1997). Knowledge requires both "notice of the injury" and "notice of the person who caused it." *Colon Prieto v. Geigel,* 115 D.P.R. 232, 247 (1984).

---

1. The statute stipulates: "If a person entitled to bring an action, other than the recovery of real property, be at the time the cause of action accrued, . . . within the age of majority . . . the time of such disability is not a part of the time limited for the commencement of the action." 32 L.P.R.A. § 254(1) (1990).

Puerto Rico case law recognizes different types of damages, which are used to identify when a plaintiff had knowledge of an injury, and thus when the statute of limitations begins to run. *Sánchez,* 1997 P.R.Eng. 878520. Here, the relevant type of damages are continuing damages, which are defined as:

> those caused by one or more culpable or negligent acts imputable to the actor, coetaneous or otherwise, that result in uninterrupted, sustained, lasting, interlinked harmful consequences, which, when known, also reveal—as foreseeable—the continuous, uninterrupted character of its effects, turning at that moment into a real damage, composed of elements of actual damage (that which has already occurred) and of future damage that is foreseeable and, therefore, real.

*Galib Frangie v. El Vocero de P.R.,* 138 D.P.R. 560, 575 (1995) (internal citation omitted). Continuing damages cases involve tortious acts that have uninterrupted and interlinked consequences, which are "known at a given moment, and at the moment they are known it can be foreseen that said consequences will steadily and incessantly continue in the future." *Sánchez,* 1997 P.R.Eng. 878520; *see also Santiago Rivera v. Rios Alonso,* 156 D.P.R., ——, 2002 TSPR 15 (2002); 2 H.M. DEL TORO, LOS DAÑOS Y PERJUICIOS EXTRACONTRACTUALES EN PUERTO RICO 641–49 (2d ed.1986) (offering examples of continuing damages, such as damage to a building that a plaintiff knows will continue to deteriorate or a the rerouting of a river that a plaintiff knows will continue to cause erosion).

In continuing damages cases, as in other tort actions in Puerto Rico, the statute of limitations commences when the plaintiff has knowledge of the injury and the author of the damage. *See Sánchez,* 1997 P.R.Eng. 878520.

Notice of the injury occurs when there is:

> some outward or physical signs through which the aggrieved party may become aware and realize that he [or she] has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed. These circumstances need not be known in order to argue that the damage has become known, because its scope, extent and weight may be established later on during the prosecution of the remedial action.

*Delgado Rodríguez v. Nazario De Ferrer,* 121 D.P.R. 342, 21 P.R.Offic.Trans. 342, 356, 1988 WL 580813 (1988) (internal citations omitted).

"Once a plaintiff is on 'notice of the injury,' the plaintiff may 'not wait for his [or her] injury to reach its final degree of development and postpone the running of the period of limitation according to his [or her] subjective appraisal and judgment.'" *See Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997) (citing *Ortiz v. Municipio De Orocovis,* 113 D.P.R. 484, 487, 13 P.R.Offic.Trans. 619, 622, 1982 WL 210544 (1982)).

"Knowledge of the author occurs when plaintiff knew or with the degree of diligence required by law should have known whom to sue." *Rosado Serrano v. E.I. Dupont de Nemours & Co.,* 797 F.Supp. 98, 102 (D.P.R.1992).

■ Here, Plaintiffs acknowledge that they knew the decedent was addicted to cigarettes more than a year before he died. *See Docket Document No. 77 (Resp. to Req. for Admissions).*

Plaintiff Cruz testifies that she knew of the health risks of smoking and told the decedent of these risks as early as 1980. *Id.* (Cruz Dep.). She attests that about

three or four years before he died, the decedent's doctors informed him that his high blood pressure was related to smoking. Around the same time, a physician told the decedent that if he continued to smoke he could die or be "left like a vegetable" because smoking exacerbated his already high blood pressure. *Id.* Plaintiff Cruz also testifies that a doctor told the decedent that if he did not take his medications and he continued to smoke, he would die within five years. *Id.* Plaintiff Cruz testifies that she heard these statements while accompanying the decedent to his doctor's appointments. *Id.*

We find that Plaintiff Cruz had knowledge of the decedent's injuries and the relationship between these injuries and smoking at least three or four years before the decedent's death. Furthermore, Plaintiff Cruz was told that the consequences of the decedent's smoking would continue in the future and lead to his death. We find that Plaintiff Cruz had knowledge of her actual injuries and foreseeable damages over a year before she filed suit. Therefore, Plaintiff Cruz's claims are time-barred.[2]

█ Plaintiff Luis Rogelio Figueroa Cruz testified that he first believed that his father's health problems were related to smoking when the decedent was hospitalized for high blood pressure in 1994. *Id.* (Luis Rogelio Figueroa Cruz Dep.).

Plaintiff Luis Rogelio Figueroa Cruz had knowledge of his father's smoking related conditions as early as 1994. However, there is no evidence in the record that Plaintiff Luis Rogelio Figueroa Cruz knew that his father's smoking related illness would continue or would lead to his father's death. Therefore, we find that Plaintiff Luis Rogelio Figueroa Cruz's

claims stemming from the death of his father are not time-barred.

**B. Preemption of Failure–to–Warn Claims**

**1. *Post–1969 Claims***

Defendant Reynolds moves for summary judgment as to Plaintiffs' state law failure-to-warn claims on the ground that they are preempted by the Labeling Act, 15 U.S.C. §§ 1331–1341. *Docket Document No. 54.* Defendant Reynolds maintains that since July 1, 1969, the effective date of the Labeling Act, they have had no duty to provide more information to the public about smoking and its health risks than that information which is required by the Labeling Act. *Id.*

Plaintiffs claim that the Labeling Act only preempts state claims brought regarding the wording of cigarette labels, not those regarding foreign language warnings. *Docket Document Nos. 64, 77.* Plaintiffs contend that Defendant has violated the Labeling Act by not including health warnings on its cigarette packages in Spanish. *Id.* Plaintiffs argue that Defendant's failure to include warnings in Spanish is a violation of Puerto Rico law, and that such a claim is not preempted by the Labeling Act. *Id.*

We do not consider whether Plaintiffs' post–1969 failure to warn claim is cognizable under state law. Rather, we evaluate whether Plaintiffs' claim that Defendant Reynolds had a duty to provide cigarette warnings in Spanish is preempted by the Labeling Act.

The Labeling Act provides a list of warnings which must be printed on packages of cigarettes that are manufactured, packaged, sold, imported, or distributed

---

**2.** Future references to Plaintiffs allude to Plaintiffs Eli Rogelio Figueroa Cruz and Luis Rogelio Figueroa Cruz.

within the United States. *See* 15 U.S.C. § 1333(a)(1).[3] The mandatory warnings, as found in the statute, are in English. *See id.* The Labeling Act's requirements apply in Puerto Rico. *See* 15 U.S.C. § 1332(3).

The statute provides that, "[n]o statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package." 15 U.S.C. § 1334(a). "In [this] pre-emption provision, Congress unequivocally precludes the requirement of any additional statements on cigarette packages beyond those provided in § 1333." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 542, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 489 n. 9, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("The territory exclusively occupied by federal law was defined in the text of the statute itself; that text specified the precise warning to smokers that Congress deemed both necessary and sufficient.")

 The requirements of the Labeling Act are unambiguous. The statute provides the precise and mandatory language for cigarette package warnings. The statute does not require the warnings to be in any other languages besides English, and Plaintiffs have not cited any relevant authority to support their contention. Furthermore, the Labeling Act provides that no additional warnings are required on cigarette packages, and we find that this includes warnings in Spanish. By

its terms, section 1334(a) preempts Plaintiffs' state-law failure-to-warn claims as of the effective date of the Labeling Act.

### 2. *Pre–1969 Claims*

State-law damages claims based on inadequate warnings prior to July 1, 1969 are not preempted. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 519–20, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

 Defendant Reynolds proffers evidence that the decedent began to smoke in 1970. *Docket Document No. 54* (Resp. to Req. for Admissions). Plaintiffs submit testimony that the decedent began to smoke as early as 1968. *Docket Document No. 77, Exhs. 1, 3, 4.* As such, there exists a genuine issue of material fact as to whether the decedent smoked prior to the effective date of the Labeling Act, and whether Plaintiffs have a claim for failure to warn of the hazards of smoking prior to the effective date of the Labeling Act.

### C. *Conflict Preemption*

Defendant Reynolds moves for summary judgment as to Plaintiffs' claims which assert liability based on the inherent characteristics of tobacco and cigarettes. Defendant Reynolds asserts that any such claims are barred by the doctrine of conflict preemption. *Docket Document No. 54.* According to Defendant, the doctrine of conflict preemption prevents state laws from being applied in a manner that conflicts

---

**3.** The statute provides:
It shall be unlawful for any person to manufacture, package, or import for sale or distribution within the United States any cigarettes the package of which fails to bear, in accordance with the requirements of this section, one of the following labels:
SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.
15 U.S.C. § 1333(a)(1).

with or frustrates the purpose of federal statutes. *Id.*

Conflict preemption occurs where "a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (internal citations omitted); *see also Insolia v. Philip Morris Inc.,* 128 F.Supp.2d 1220, 1224 (W.D.Wis.2000) ("If Congress gives express sanction to an activity, the states cannot declare that activity tortious.") (internal citation omitted).

■ Congress has foreclosed the removal of tobacco products from the market. *See FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 121, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000); *see also* 7 U.S.C. § 1311(a) (1994 & Supp. I 2001) ("The marketing of tobacco constitutes one of the greatest basic industries of the United States...."); 15 U.S.C § 1331 (declaring congressional policy to protect the national economy while informing smokers about the adverse effects of cigarettes).

Therefore, the court in *Insolia* reasoned that "allowing tort actions against cigarette manufacturers and sellers for the allegedly negligent act of continuing to make and sell cigarettes would interfere with Congress's policy in favor of keeping cigarettes on the market." 128 F.Supp.2d at 1224–25; *see also Geier v. American Honda Motor Co.,* 529 U.S. 861, 886, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (finding tort action preempted where the rule of state tort law that the plaintiff argued for

would stand as an obstacle to Congress' objective).

We find that Plaintiffs are barred from pursuing a state-law tort claim based exclusively on the theory that Defendant Reynolds manufactured and sold cigarettes. Defendant Reynolds cannot be held liable under Puerto Rico law simply because it manufactures and sells cigarettes. Therefore, to the extent that Plaintiffs seek to impose tort liability against Defendant Reynolds merely for manufacturing and selling cigarettes, we find Plaintiffs' claims to be preempted.

### D. *Proximate Causation*

■ Defendant Reynolds requests summary judgment as to all of Plaintiffs' negligence and strict liability claims on the ground that they have failed to show that the decedent's smoking caused his illness and death. *Docket Document No. 54.*

To establish negligence and strict liability, Plaintiffs must proffer evidence which supports a conclusion that smoking was a substantial factor in the decedent's injuries. *See Muñiz–Nuñez v. Am. Home Prods. Corp.,* 582 F.Supp. 459, 461 (D.P.R. 1984) (internal citation omitted); *see also Carballo–Rodriguez v. Clark Equip. Co.,* 147 F.Supp.2d 66, 71–72 (D.P.R.2001).

■ Plaintiffs' expert witness, Dr. James Nelson, testified that smoking was a substantial factor in the decedent's death. *See Docket Document No. 77, Exh. 6.* Dr. Nelson's testimony creates a genuine issue of material fact as to causation.[4]

---

4. We find that Dr. Nelson's testimony is admissible under Federal Rule of Evidence 702. *See* Fed.R.Evid. 702; *see also Mitchell v. United States,* 141 F.3d 8, 15 (1st Cir.1998) (explaining that district court has substantial discretion to decide whether to admit relevant expert testimony). Although Defendant Reyn-

olds appears to disagree with Dr. Nelson's reasoning and conclusion, that is not a sufficient basis to exclude the testimony. " 'The question whether the basis of the doctor's opinion is sound goes to the weight of the evidence, not its admissibility.' " *See Mitchell,* 141 F.3d at 15 (internal citation omitted).

## E. *Defective Design*

Defendant Reynolds contends that Plaintiffs have not established that Winston cigarettes are defective, and as such cannot establish negligence or strict liability for defective design. *Docket Document No. 54.*

### 1. *Negligence*

As we explained *supra,* Plaintiffs' post–1969 failure-to-warn claims are preempted by the Labeling Act.

Plaintiffs do not respond to the allegations that their negligence claims are flawed or provide evidence to support a finding of negligence. *Id.* It appears from Plaintiff's summary judgment motion that they are no longer asserting that Defendant Reynolds acted negligently in designing Winston cigarettes.

To establish a claim of negligence, Plaintiffs must establish that "(1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct, (2) defendant breached that duty through a negligent act or omission, and (3) the negligent act or omission caused the plaintiff's harm." *Carballo–Rodriguez,* 147 F.Supp.2d at 72 (citing *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.,* 958 F.2d 1169, 1171 (1st Cir.1992)). Plaintiffs bear the burden of establishing the applicable standard of care, and proving that Defendants acted below that standard.

■ Here Plaintiffs have not proffered any evidence regarding the applicable standard of care for designing cigarettes or how Defendant Reynolds purportedly fell below such a standard. Therefore, to the extent that Plaintiffs are arguing that

Defendant Reynolds negligently designed its cigarettes, we find that Plaintiffs have not created a genuine issue of material fact as to these claims, and Defendant Reynolds is entitled to summary judgment.

### 2. *Strict Liability*

Plaintiffs assert that Defendant Reynolds is strictly liable for failing to warn the decedent of the risks and addictive nature of smoking and defectively designing its cigarettes. *Docket Document No. 77.*

To establish strict liability for a design defect under Puerto Rico law, Plaintiffs must show that Defendant Reynolds "places a product on the market, knowing that it is to be used without inspection for defects, and it has a defect that *causes* injuries." *Malave–Felix v. Volvo Car Corp.,* 946 F.2d 967, 971 (1st Cir.1991) (internal citations omitted). Puerto Rico has generally adopted the principles of strict liability set out in the Restatement (Second) of Torts § 402A.[5] *Id.* However, under Puerto Rico law, the defect in the product does not have to be "unreasonably dangerous to the user or consumer." *Montero Saldana v. Am. Motors Corp.,* 107 D.P.R. 452, 7 P.R.Offic.Trans. 501, 508, 1978 WL 48845 (1978). Rather, Plaintiffs only need to establish that the product is unsafe. *Id.*

The parties agree that California's consumer expectations test governs Plaintiffs' design defect claims. *See Docket Document Nos. 54, 77.* Under this test, "a product may be found defective in design if the plaintiff demonstrates 'that the product failed to perform as safely as an ordi-

---

**5.** The Restatement provides that:

One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in

the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A(1) (1963 & Supp. I 2002).

nary consumer would expect when used in an intended or reasonably foreseeable manner.' " *Carballo–Rodrigurez,* 147 F.Supp.2d at 72 (internal citation omitted) (explaining that Puerto Rico has adopted the California Supreme Court's formula for establishing strict liability). A plaintiff can demonstrate the defectiveness of a product through circumstantial evidence, and need not resort to expert testimony. *See Barker v. Lull Eng'g,* 20 Cal.3d 413, 430, 143 Cal.Rptr. 225, 573 P.2d 443 (1978).

As evidence of a design defect, Plaintiffs offer the testimony of the decedent's wife, who explains that he was told that if he continued to smoke he could die or be left in a vegetative state. *Docket Document No. 77.* Plaintiffs also proffer an admission from Defendant Reynolds that nicotine is addictive and an admission that over the years, Defendant Reynolds has significantly reduced the amount of tar and nicotine found in its cigarettes. *Id.* Defendant Reynolds also admits that it has the ability to alter the amount of a number of naturally occurring cigarette constituents, including nicotine. *Id.* Plaintiffs submit a 1988 report from the Surgeon General of the United States, which states that cigarettes are addicting and that nicotine is the drug that causes addiction. *Id.* Finally, Plaintiffs offer the testimony of Defendant Reynolds' expert witness, who testifies that it has been widespread, common knowledge for more than fifty years that cigarette smoking can cause serious, life-shortening diseases and can be very addictive. *Id.*

Plaintiffs' proffered evidence does not support the position that the ordinary consumer does not know or did not know in the past that cigarettes were addictive and dangerous for smokers. In fact, Plaintiffs have not proffered any evidence suggesting what the ordinary consumer expected from cigarettes. Furthermore, Plaintiffs do not argue that Winston ciga-

rettes in particular fell below the ordinary consumer's expectations. Without any evidence regarding consumers' expectations, Plaintiffs' design defect claims arising under this test necessarily fail. *See Collazo–Santiago v. Toyota Motor Corp.,* 937 F.Supp. 134, 139 (D.P.R.1996) (explaining that in order to establish a design defect under the consumer expectation test, a plaintiff must " 'produce evidence that the product failed to satisfy ordinary consumer expectations as to safety' "); *see also Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("[s]ummary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

## IV.

### *Conclusion*

Since Plaintiff Cruz had knowledge of the decedent's injuries, the author of those injuries, and knowledge that such injuries would continue at least a few years before she filed her complaint, we find that her claims against Defendant Reynolds are time-barred. Therefore, we GRANT Defendant Reynolds' motion for summary judgment as to Plaintiff Cruz' claims. However, the record does not support a finding that Plaintiff Luis Rogelio Figueroa Cruz' claims are time-barred, and we DENY Defendant Reynolds' motion for summary judgment on timeliness grounds as to this Plaintiff.

This court finds that Plaintiffs' failure-to-warn claims are preempted by federal law as of the effective date of the Labeling Act, July 1, 1969. The statute does not require cigarette manufacturers to provide warnings in any language other than English. Therefore, we DENY Plaintiffs' motion for summary judgment on the ground that Defendant Reynolds was obligated to provide warnings in Spanish after July 1,

1969. We GRANT Defendant Reynolds' motion for summary judgment as to Plaintiffs's post–1969 failure-to-warn claims.

There exists a genuine issue of material fact as to when the decedent began to smoke, and whether Plaintiffs have stated failure-to-warn claims that predate the Labeling Act. We DENY Defendant Reynolds' motion for summary judgment as to Plaintiffs' failure-to-warn claims that arose prior to July 1, 1969.

This court finds that to the extent Plaintiffs are asserting liability based solely on Defendant Reynolds' manufacture and sale of cigarettes, their claims are preempted, and we GRANT Defendant's motion for summary judgment of those claims.

Plaintiffs have created a genuine issue of material fact as to causation, and we DENY Defendant Reynolds' request for summary judgment on this ground.

Plaintiffs have not proffered evidence which supports their defective design claims and we GRANT Defendant Reynolds' motion for summary judgment as to these claims.

**IT IS SO ORDERED.**