852 So.2d 339 (2003)
Joseph WALLENT, Appellant,
v.
FLORIDA POWER CORPORATION; Dunedin Electric Co., Inc.; and Serendipity Mobile Homeowners, Inc., Appellees.
No. 2D01-4336.
District Court of Appeal of Florida, Second District.
August 13, 2003.
Hendrik Uiterwyk of Abrahamson & Uiterwyk, Tampa; and Ralph O. Anderson and Gary A. Magnarini of Hicks, Anderson & Kneale, P.A., Miami, for Appellant.
Richard J. McCrory, St. Petersburg; and Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, for Appellee Florida Power Corporation.
No appearance for Appellees Dunedin Electric Co., Inc., and Serendipity Mobile Homeowners, Inc.
ALTENBERND, Chief Judge.
Joseph Wallent appeals a judgment entered in his favor in a personal injury action against Florida Power Corporation. Mr. Wallent argues that he was entitled to a directed verdict on the issue of comparative negligence and that the jury was required to return a larger award for future *340 medical expenses. After a full review of the record, we reject his second argument. However, we find merit in his claim that the trial court improperly submitted the issue of comparative negligence to the jury. We reverse the judgment and require entry of judgment on the verdict without a reduction for comparative negligence.
Mr. Wallent sued both Florida Power and Serendipity Mobile Homeowners, Inc. (Serendipity), the owner of a mobile home park, for injuries he sustained when electric wires in an outdoor main circuit breaker box shorted as he was attempting to open the door to the box. He was opening the box to reset the main circuit breaker in order to restore power to his friend's mobile home. He maintained that the accident happened as a result of a bad splice in the power line inside the circuit breaker box. He claimed that either one or both defendants were responsible for the defective splice.
Florida Power raised the defense of comparative negligence. At the close of the case, the trial court reserved ruling on Mr. Wallent's motion for a directed verdict on this issue. The jury found in favor of Serendipity. It found against Florida Power, which, as an electrical utility, had the highest duty of care commensurate with the circumstances. See Fla. Power & Light Co. v. Brinson, 67 So.2d 407, 410-11 (Fla.1953); Fla. Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, 915 (1938). The jury awarded total damages of $80,466.60, including $18,399.00 for future medical expenses to cover a six-year period. However, the jury found that Mr. Wallent was ninety percent comparatively negligent. Ultimately, after denying posttrial motions, the trial court entered judgment against Florida Power on this verdict for a total award to Mr. Wallent of approximately $8,000.00.
At trial, Florida Power presented no witnesses during its case and introduced only a few photographs of the electrical circuitry and mobile home. To establish comparative negligence, it relied primarily on cross-examination. Florida Power argued that Mr. Wallent was negligent either because he had pulled too hard on the box when he attempted to open it or because he was elderly and inexperienced and should not have opened the door to a standard circuit breaker box in order to flip the switch on the circuit breaker. It is noteworthy that the expert hired by Serendipity admitted that Mr. Wallent had not done anything improper and that the electrical short could have been caused by a very slight movement of the pedestal. Florida Power bore the burden of proof on this affirmative defense, see Hough v. Menses, 95 So.2d 410 (Fla.1957), and we conclude that it failed in that proof.
The evidence that relates to the issue of comparative negligence can be explained in greater detail as follows: In December 1997, Mr. Wallent was seventy-nine years old and lived in a rented mobile home in the Serendipity Mobile Home Park in Clearwater, Florida. His good friend, Johanna Downs, lived in another rented mobile home a few blocks away in the same park. On December 30, the night before the incident, Mr. Wallent and Ms. Downs were watching television in her mobile home at approximately 8 p.m. when the power went out.
Mr. Wallent and Ms. Downs did not know how to restore power to the mobile home, so Ms. Downs called Florida Power Corporation. Ms. Downs testified that a representative of Florida Power told her to check the main circuit breaker inside the mobile home. They checked this breaker, but it had not tripped and was still in the on position. Ms. Downs reported this information to the Florida Power representative, *341 who suggested that Ms. Downs go outside and check the main circuit breaker. Ms. Downs explained that she was elderly and asked for help. Although Florida Power was not contractually obligated to send someone to reset the outside circuit breaker,[1] the representative made arrangements for someone to go to the mobile home.
A few minutes later, a Florida Power employee arrived in a truck. He went to a "pedestal" outside the mobile home. The pedestal was described as a grounded rectangular metal box with an interior that is divided in half from front to back. One half, the "supply side," was closed and protected and, as its name implies, received electrical supply from Florida Power through insulated underground wires. The other half of the pedestal, the "load side," contained an electrical meter above the main electrical circuit breaker for each mobile home. The main circuit breaker on the load side was accessible by an unlocked small metal door that opened upward. The door featured a small metal catch at the bottom that allowed the door to stay closed when not locked. Once the door was opened, this side of the cabinet contained a typical switch to control a main circuit breaker. The Florida Power employee opened this door and restored power to the mobile home. Mr. Wallent was unable to see what the Florida Power employee did to the circuit breaker. Mr. Wallent then inquired what to do if this should happen again, and the employee told him to use a pair of pliers to open the door and simply reset the switch.[2]
On the next night, which was New Year's Eve, the two elderly people were again watching television when the lights went out. Mr. Wallent put on some gardening gloves and went out to the pedestal to reset the switch. As he was pulling on the pedestal door to lift it open and before it opened, electrical wires in the supply side of the box shorted to ground. Mr. Wallent was not shocked, but the electrical explosion from the short caused him to fall or be thrown backward. Unfortunately, he broke his wrist and hip, requiring him to undergo hip replacement surgery.
Examinations of the pedestal following this accident established that a defective splice in the electrical wire enclosed in the supply side of the pedestal was responsible for the incident. The wires became hot at the splice and essentially melted the insulation in that area. Eventually the wire insulation deteriorated, exposed the wires, and caused a short circuit. There was considerable dispute at trial as to whether this defect was the fault of a Florida Power employee or some other electrician. However, no one suggested that Mr. Wallent knew or had any reason to know that the wire in the secured and protected supply side of this pedestal was defective. These wires and the splice were not visible to Mr. Wallent and would not have been visible even if he had successfully opened the door.
It was undisputed that this elderly man must have triggered the accident by moving or wiggling the pedestal while attempting to open the door. No one, however, testified that the pedestal was loose after the incident or that it appeared to have been damaged by Mr. Wallent. The Florida Power employee who repaired the splice on January 1, 1998, testified during *342 Mr. Wallent's case. He did not testify that the pedestal had been misused by Mr. Wallent. Mr. Wallent's age and health would not support a theory that he had applied excessive force in attempting to open the pedestal door. As stated earlier, Serendipity's expert admitted that Mr. Wallent had not done anything improper and that the electrical short could have been caused by a very slight movement of the pedestal. Mr. Wallent's expert concurred in that opinion. Florida Power simply presented no evidence that Mr. Wallent abused this pedestal or used anything other than normal force to open the door.[3]
Concerning Florida Power's suggestion that an elderly person inexperienced with electricity is negligent if he attempts to open the door to a circuit breaker box, it is important to understand that Mr. Wallent was not trying to open the Florida Power supply side of the pedestal. He was attempting to open the load side door containing the switch designed to allow residents to turn on, off, or reset the main circuit breaker for the mobile home. This circuit breaker box is similar to the electrical box on the outside of most homes or, for that matter, the circuit breaker box located inside most homes. There are no warnings on the load side of the circuit box stating that it should be opened only by electricians. It is not a restricted portion of the electrical circuit, but a grounded box with a switch that is designed to be safe for homeowners to use for the intended purpose of controlling the main circuit breaker. Thus, there was no evidence that Mr. Wallent breached any standard of care when he attempted to open this box to reset the circuit breaker.
We are cognizant of the dangers inherent in electricity. However, we see no justification for a rule in negligence law that would require homeowners, especially retired people, to hire an electrician every time they needed to reset or turn on or off a main circuit breaker. Florida Power presented no evidence that would support the creation of such a legal standard of care. Nothing in the evidence supports a theory that Mr. Wallent knew or should have known of any danger associated with his effort to open the door to the circuit breaker box.
A motion for directed verdict should be granted when there is no evidence or reasonable inferences upon which a jury could legally predicate a verdict in favor of the nonmoving party. See Whiteaker v. Gilreath, 734 So.2d 1105 (Fla. 2d DCA 1999); Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1978); see also Fla. Ass'n of Workers for the Blind, Inc. v. Guillaume, 618 So.2d 275, 276 (Fla. 3d DCA 1993). This was a case in which a directed verdict was required, and the trial court should reenter judgment in favor of Mr. Wallent without a reduction for comparative negligence. See Guillaume, 618 So.2d at 276; Borenstein v. Raskin, 401 So.2d 884, 886 (Fla. 3d DCA 1981); see also Ramos v. Ambu-Car of Dade County, Inc., 627 So.2d 1255 (Fla. 3d DCA 1993).
Mr. Wallent also argues that the jury was compelled to award a larger award of future medical damages and that he was entitled to a directed verdict on this element of damage. Although the cost of a second hip replacement was not disputed, the jury was free to determine that Mr. Wallent would not require such additional future medical treatment during *343 his six-year life expectancy. Accordingly, we find no error in the trial court's decision to deny a directed verdict on this element of damage.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT and DAVIS, JJ., Concur.
NOTES
[1] The outside circuit breaker is on the customer's side of the electric meter. If the circuit breaker needed repair, Florida Power would not be responsible for that repair.
[2] The identity of this employee was never discovered, and he did not testify. Florida Power, however, did not dispute that one of their employees did restore power on the first evening.
[3] There was also considerable cross-examination about whether Mr. Wallent used pliers when opening the box. No one testified, however, that the use of pliers played any role in this accident.