929 So.2d 1172 (2006)
Carmela FERLANTI, as Personal Representative of the Estate and Survivors of Joseph Ferlanti, Appellant,
v.
LIGGETT GROUP, INC. and Vector Group Ltd., Appellees.
No. 4D05-1724.
District Court of Appeal of Florida, Fourth District.
June 7, 2006.
*1173 Angel M. Reyes and Daniel F. O'Shea of Reyes & O'Shea, P.A., Miami, and John Venable of Venable & Venable, P.A., Brooksville, for appellant.
Denise B. Crockett and Alvin B. Davis, P.A., of Squire, Sanders & Dempsey, LLP, and Kelly A. Luther of Clarke Silverglate Campbell Williams & Montgomery, Miami, for appellee Liggett Group, Inc.
STEVENSON, C.J.
Appellant, Carmela Ferlanti, as personal representative of the estate of her late husband, Joseph Ferlanti, appeals the trial court's summary judgment entered in favor of appellee, Liggett Group, Inc. We reverse.
Ferlanti filed a personal injury lawsuit, seeking damages for injuries sustained by her late husband as a result of his smoking Liggett's Chesterfield cigarettes. Discovery indicates that the decedent is believed to have smoked from 1941 until 2003. The first amended complaint contains four counts that are relevant for purposes of this appeal. Count I, for negligence, alleges that the cigarettes contained latent defects, that Liggett failed to use alternative safer designs to reduce or eliminate harmful materials or characteristics, that Liggett sold cigarettes containing "artificially high levels of nicotine," and that, prior to 1969, Liggett failed to warn foreseeable users, such as the decedent, of the dangers posed by the cigarettes. Count II, for strict liability, asserts that the cigarettes' defective design resulted in an unreasonably dangerous product, that Liggett failed to design and manufacture comparable cigarettes that reduced or eliminated the levels of tar, nicotine, and other harmful substances, and that Liggett failed to warn of the dangers caused by exposure to those products. Count III cites fraud, deceit, and misrepresentation. Count IV claims Liggett concealed the health risks posed by the cigarettes. The trial court entered summary judgment in favor of Liggett on all counts.
When granting summary judgment, the trial court held that both the negligence and strict liability claims were barred by conflict preemption. Under the Supremacy Clause of the United States Constitution, Congress may preempt state common law and state statutory law through legislation. See Art. VI, § 2, U.S. Const. "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." Maryland v. Louisiana, *1174 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The principles of federalism dictate that preemption should not be found "unless that is `the clear and manifest purpose of Congress.'" Teper v. Miller, 82 F.3d 989, 993 (11th Cir.1996) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). "[I]t is the burden of the party claiming Congress intended to preempt state law to prove it." Video Trax, Inc. v. NationsBank, N.A., 33 F.Supp.2d 1041, 1048 (S.D.Fla.1998), aff'd, 205 F.3d 1358 (11th Cir.2000).
Liggett's preemption argument relied heavily upon statements in Food & Drug Administration v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), concerning tobacco and the national economy. Liggett contends that allowing tort claims against tobacco companies for producing, distributing, and selling cigarettes would conflict with the United States Supreme Court's findings that "Congress stopped well short of ordering a ban" of tobacco products and "foreclosed the removal of tobacco products from the market." Id. at 137-38, 120 S.Ct. 1291. However, as recognized by one court, "crucial to the FDA Court's conclusion was its implicit determination that the FDA's extension of jurisdiction over cigarettes and smokeless tobacco would have resulted in a ban of all tobacco products: there was no suggestion that there would be selective regulation of tobacco products based on their design. It is this result  a complete ban on tobacco products  that would have conflicted with Congressional intent." Conley v. R.J. Reynolds Tobacco Co., 286 F.Supp.2d 1097, 1106 (N.D.Cal.2002) (citing FDA, 529 U.S. at 137, 120 S.Ct. 1291). We hold that to the extent appellant's claims are based on a design defect in the cigarettes smoked by the decedent, her claims are not barred by the doctrine of conflict preemption. In light of this distinction, there is no conflict between the holding in this case and the Third District's statement in Liggett Group, Inc. v. Engle, 853 So.2d 434, 460 (Fla. 3d DCA 2003), rev. granted, 873 So.2d 1222 (Fla.2004), that "[f]ederal law preempts claims that selling cigarettes is tortious or otherwise improper."
Having determined appellant's claims are not preempted, we next determine whether her claims should have survived summary judgment. In granting summary judgment for the design defect claims, the trial court held that appellant presented no evidence that (1) the Chesterfield cigarettes were not ordinary or unreasonably dangerous and (2) an alternative cigarette design would have prevented her late husband's injuries. Concerning the failure to warn claims, the trial court stated that the dangers of cigarette smoking were open, obvious, and common knowledge. The trial court also held that Liggett was entitled to summary judgment on the fraud and fraudulent concealment claims because appellant failed to present any evidence that her husband heard or relied on any misrepresentations or concealments.
Appellant filed several exhibits regarding the public's general lack of knowledge of the dangers posed by cigarettes, including a Gallup Poll for the years 1949 through 1958. The Gallup Poll revealed that approximately 45% of all participants believed cigarette smoking is one of the causes of lung cancer. Appellant also introduced a survey that was conducted for Liggett in 1963. There, only 39% of the 2,000 participants thought smokers should stop smoking for health reasons.
Liggett points to a document by Dr. Otis Graham to contradict appellant's evidence concerning common knowledge. According to Graham's research, "there was widespread *1175 public awareness, both before and especially after the medical reports that began in 1950, that cigarette smoking can be harmful to health, can lead to disease and death, and can be difficult to quit." Both sides also referenced various cases where courts discussed whether the risks of cigarette smoking were common knowledge. Compare Allgood v. R.J. Reynolds Tobacco Co., 80 F.3d 168, 172 (5th Cir. 1996) ("Like the dangers of alcohol consumption, the dangers of cigarette smoking have long been known to the community."), with Boerner v. Brown Williamson Tobacco Co., 394 F.3d 594, 599 (8th Cir. 2005) (finding widower presented sufficient evidence to prevail on a design defect claim because "historically[,] the average smoker did not fully appreciate the nature or severity of the health risks associated with smoking").
In support of her claim that Chesterfield cigarettes were defectively designed, appellant presented evidence showing there is a close relationship between the materials in cigarettes and lung cancer. In fact, laboratory tests revealed that only fifteen Chesterfield cigarettes were needed to kill 50% of the animals tested  as opposed to thirty-eight cigarettes from other brands, such as the Sano unfiltered cigarette. Also, pursuant to transcripts included in the record, Dr. James Woods, a former employee of R.J. Reynolds Tobacco Company, opined that, presumably, a low tar, low nicotine cigarette would be a "safer cigarette" and that cigarettes can be made safer by reducing the cigarette's diameter or length.
"A defendant's motion for summary judgment is not a vehicle to test the sufficiency of the evidence to support a plaintiff's claims." Laschke v. Brown & Williamson Tobacco Corp., 766 So.2d 1076, 1077 (Fla. 2d DCA 2000). "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact." Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). We agree that the trial judge impermissibly shifted the burden from Liggett. The record before this court shows numerous factual issues including, without limitation, whether the quantity of tar and nicotine made Chesterfield cigarettes defective, whether the risks associated with smoking cigarettes were open, obvious, and common knowledge, and whether Joseph Ferlanti relied on any statements or omissions. Liggett's attorney did not conclusively rebut the allegations and evidence presented that Chesterfield cigarettes were defective. Nor did Liggett's attorney disprove detrimental reliance. Appellant's lack of knowledge concerning what her husband relied on and what he discussed with his children, grandchildren, and other individuals does not conclusively establish that the decedent did not rely on any statements or omissions. See Tooke v. Downing, 564 So.2d 250, 251 (Fla. 1st DCA 1990) (reversing summary judgment for the defendants in a wrongful death action stemming from a motor vehicle collision because the personal representative's deposition testimony that she had no personal knowledge as to the facts surrounding the collision merely proved her state of knowledge as of that date and was not competent to prove that she "had no evidence regarding the alleged acts of negligence").
Finally, "[t]he established rule in respect to judicial notice is that it should be exercised with great caution. The matter judicially noticed must be of common and general knowledge. Moreover, it must be authoritatively settled and free from doubt or uncertainty." Makos v. Prince, 64 So.2d 670, 673 (Fla.1953). The existence of contradictory evidence on *1176 whether the dangers of smoking were common knowledge precluded the trial judge from taking judicial notice when ruling on the motions for summary judgment.[1]See Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1154 (9th Cir.2005) (refusing to take judicial notice that the hazards of lung cancer were well known before 1969 because "the evidence in the record, though slight, is sufficient to survive summary judgment and raise a question for a trier of fact"); Tompkin v. Am. Brands, 219 F.3d 566, 573 (6th Cir.2000) (reversing summary judgment in favor of the defendant tobacco companies because a jury question existed regarding the extent of "common knowledge" of the link between cigarette smoking and lung cancer between 1950 and 1965).
Accordingly, we reverse the judgment on appeal and remand for further proceedings.
Reversed.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] We do not address whether a party at trial is required to utilize an expert to establish that the dangers of cigarettes were common knowledge.