973 So.2d 467 (2007)
LIGGETT GROUP, INC., Appellant,
v.
Beverly DAVIS, Appellee.
No. 4004-3811.
District Court of Appeal of Florida, Fourth District.
October 10, 2007.
*469 Denise B. Crockett and Alvin B. Davis, P.A., of Steel Hector & Davis, LLP, and Kelly A. Luther of Clarke Silverglate Campbell Williams & Montgomery, Miami, for appellant.
John F. Venable of Venable & Venable, P.A., Brooksville, and Angel M. Reyes and Daniel F. O'Shea of Reyes & O'Shea, P.A., Miami, for appellee.
SCOLA, JACQUELINE HOGAN, Associate Judge.
Appellant, Liggett Group, Inc., appeals a jury verdict in favor of appellee, Beverly Davis,[1] with respect to two legal theories: negligence and defective design of the cigarettes causing Davis' harm, lung cancer.[2] The jury awarded damages in excess of $500,000 to Davis. Liggett appeals the jury's findings claiming first, federal preemption and second, that in spite of the two-issue interrogatory submitted to the jury on the second of Davis' verdicts, there was no evidence of an alternative safer design applicable to both theories which would have reduced or prevented Davis' injuries; thus, the trial court should have granted Liggett's motion for directed verdict. This error, Liggett claims, was compounded by erroneous instructions on the strict liability claim.
The first question raised is whether the trial court erred in permitting the jury to consider a "continuing to manufacture cigarettes" claim. We answer the question in the affirmative.
As to the second question, we hold that the trial court did not err in refusing to grant a directed verdict on Davis' strict liability design defect claim; and next, that there was no error in the"jury instructions on Davis' strict liability design defect claim.
Because the jury's verdict of damages may be sustained on the strict liability claim, we affirm.

FACTS
Beverly Davis sued Liggett Group, Inc., for injuries she suffered as a result of smoking Chesterfield cigarettes, manufactured by Liggett, from 1951 to 1974. In 2001, Davis was diagnosed with lung cancer. Though she had continued, to smoke cigarettes after 1974, she had switched to a brand manufactured by another company. The jury awarded Davis over $500,000 finding in her favor on two of her claims, the "negligent continuing to manufacture" claim and the "strict liability defective design" claim.
*470 The trial court instructed the jury that there were two distinct claims presented: negligence and product liability. In charging the jury on the negligence claim, the relevant part of the jury instruction told the jury that they should determine whether Liggett "was negligent in doing or failing to do one or more of the following," one of which was "continuing to manufacture Chesterfield cigarettes when it became known to [Liggett] that such cigarettes posed significant risk to the health of smokers of such cigarettes."
As to the strict liability claim, the trial court instructed the jury they must determine "whether the Chesterfield cigarettes manufactured by [Liggett] were defective when they left [Liggett's] possession;" and if so, whether the defect was the legal cause of the damage. The trial court further explained, "[a] product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect, when used as intended or in a manner reasonably foreseeable by the manufacture, or the risk in the design outweighs the benefits." Liggett did not object to the this issue verdict form. Liggett did request a special jury instruction which the court refused to give.

NEGLIGENCE IN CONTINUING TO MANUFACTURE
Liggett argues that by allowing the jury to consider a negligence claim based merely on its continuing to manufacture cigarettes, the trial court violated federal conflict preemption, claiming Congress has rejected a ban on cigarette products and foreclosed the removal of cigarettes from the market. Liggett further argues that such a claim circumvented the elements of Florida products liability law. Davis responds that her negligence claim was not preempted and is a legally viable negligence claim.

STRICT LIABILITY DESIGN DEFECT
Liggett claims that the trial court should have granted a directed verdict on the defective design claim because Davis did not prove that the cigarettes manufactured by Liggett were dangerous beyond that contemplated by the ordinary consumer; nor, Liggett claims, did Davis prove that an alternative design would have allowed her to avoid her injury. Davis responds that where the jury was instructed as to both the ordinary consumer test and the risk utility test and a general verdict form was used, reversal is not warranted under the "two issue rule." In addition, Davis argues that should this court decide to review this issue despite the "two issue rule," the trial court did not err in refusing to grant the directed verdict as to this claim. Finally, Davis claims, the court did not err in refusing to give a jury instruction as requested by Liggett because the instruction was not a correct statement of the law.

STANDARD OF REVIEW
This court reviews a trial court's decision on a motion for directed verdict using the de novo standard. See Flagstar Cos. v. Cole-Ehlinger, 909 So.2d 320, 322 (Fla. 4th DCA 2005). "A motion for directed verdict should be granted when there is no evidence or reasonable inferences upon which a jury could legally predicate a verdict in favor of the nonmoving party." Wallent v. Fla. Power Corp., 852 So.2d 339, 342 (Fla. 2d DCA 2003).

PREEMPTION
Appellant argues that the trial court erred in allowing the jury to consider the continuing to manufacture claim relying primarily on Food and Drug Administration *471 v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), for the proposition that Congress intends to keep cigarettes on the market and, therefore, to make the manufacture of cigarettes tortious conflicts with federal law. Appellant asserts that his position was recognized by the third district in Liggett Group Inc. v. Engle, 853 So.2d 434, 460 (Fla. 3d DCA 2003), reversed by Engle v. Liggett Group Inc., 945 So.2d 1246 (Fla.2006).
The doctrine of conflict preemption prevents state laws which conflict with federal statutes from being applied. De Jesus Rivera v. R.J. Reynolds Tobacco Co., 368 F.Supp.2d 148, 154 (D.Puerto Rico 2005) (citing FDA, 529 U.S. at 121, 120 S.Ct. 1291). Conflict preemption occurs where "a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law." Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (internal citation omitted). Conflict preemption turns on the identification of "actual conflict and not an express statement of preemptive intent." Geier v. Am. Honda Motor Co., 529 U.S. 861, 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). "If Congress gives express sanction to an activity, the states cannot declare that activity tortious." Insolia v. Philip Morris Inc., 128 F.Supp.2d 1220, 1224 (W.D.Wis.2000) (citing Geier, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914).
"Congress has foreclosed the removal of tobacco products from the market." De Jesus Rivera, 368 F.Supp.2d at 154 (citing Prado Alvarez v. R.J. Reynolds Tobacco Co., 313 F.Supp.2d 61, 72 (D.Puer to Rico 2004)). Insolia stands for the proposition that Congress' considered decision that sale of cigarettes was not only not illegal but part of the market that the government supported, preempted a state negligence claim against tobacco manufacturers based on their continuing to manufacture and sell cigarettes once they realized the danger that cigarettes posed, even though no statute or regulation explicitly preempts such claims. Such is the very claim in the case at hand.
Appellee argues that appellant has ignored Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In that case, the Supreme Court addressed the issue of preemption and whether state law common law actions for failure to warn, breach of express warranty, fraudulent misrepresentation, and conspiracy to misrepresent or conceal material facts were preempted. Cipollone, 505 U.S. at 524-30, 112 S.Ct. 2608. Even though none of the opinions in Cipollone acquired a majority, the plurality has been treated as a majority opinion and the test articulated therein is ". . . whether the legal duty is the predicate of the commonlaw damages action constitutes a `requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion.'" Id. at 523-24, 112 S.Ct. 2608. The Court therein addressed specific causes of action which are different from those dealt with here, but ultimately found that state laws which required a showing that warnings on cigarettes should have been more clearly stated, were preempted, and the state law claims based on the manufacturer's practices of testing or research unrelated to advertising were not preempted.
The Eleventh Circuit Court of Appeals in Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183 (11th Cir.2004), explained the Cipollone test stating that "under Cipollone whether a state law claim is preempted is dependent on the exact nature *472 of that particular claim." Spain, 363 F.3d at 1193.
Our own Florida Supreme Court pointed out in Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932 (Fla.2000) that express warranty claims are not preempted because "liability for express warranty is not imposed under state law but rather by the warrantor's express actions." Carter, 778 So.2d. at 940. It would appear, therefore, that not all claims are preempted, only certain ones.
Appellant's position in this case, however, is more far-reaching than preemption and goes to the broader argument that where Congress clearly intends to keep cigarettes on the market, the manufacture of them cannot be considered tortious.
Although recently in Ferlanti v. Liggett Group, Inc., 929 So.2d 1172, 1174 (Fla. 4th DCA 2006), our own court determined that there is no federal preemption of design defect claims; the issue was never addressed other than in dicta in Engle, 945 So.2d 1246. The few comments regarding preemption were made in connection with the propriety of the closing argument of counsel, and neither the. Supreme Court nor the Third District squarely addressed the issue of conflict preemption.
Nevertheless, not only our court in Ferlanti but also the Second District in Philip Morris USA, Inc., v. Arnitz, 933 So.2d 693 (Fla. 2d DCA 2006), has held that a design defect claim against a cigarette manufacturer is not preempted by federal statutes. This is the prevailing position of courts which have addressed this issue. See, e.g., Thompson v. Brown & Williamson Tobacco Corp., 207 S.W.3d 76 (Mo.Ct.App.2006); Boerner v. Brown & Williamson Tobacco Co., 394 F.3d 594 (8th Cir.2005); Rose v. Am. Tobacco Co., 3 Misc.3d 1103(A), 787 N.Y.S.2d 681 (N.Y.Sup.2004). But see De Jesus Rivera, 368 F.Supp.2d 148 (D.Puerto Rico 2005).
Indeed, the United States Supreme Court noted that many common law claims are not preempted from regulation, including a description of claims that we conclude are design defect claims. In Cipollone, a case addressing the extent that Congress preempted common law claims against cigarette manufacturers, the Court wrote:
That the preemptive scope of § 5(b) cannot be limited to positive enactments does not mean that that section preempts all common-law claims. For example, as respondents concede, § 5(b) does not generally preempt "state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes." For purposes of § 5(b), the common law is not of a piece.
Cipollone, 505 U.S. at 523, 112 S.Ct. 2608 (emphasis added) (footnote omitted). This clearly indicates that the Court did not consider a design defect claim as being preempted by Congress.
We therefore conclude that the negligence claim based on Liggett's mere continuing to manufacture cigarettes is barred by conflict preemption. We can find no authority for a claim for negligently continuing to manufacture cigarettes. According to the jury instruction, the claim seeks to hold Liggett liable for continuing to manufacture cigarettes when it became known to Liggett that they posed a significant danger to the health of smokers. Although Davis specifically directs this claim against Chesterfield cigarettes, it is clear from the evidence at trial as well as the literature that this claim would necessitate all manufacturers from refraining from producing cigarettes because they all pose significant danger to the health of smokers. Thus, to allow this claim would be contrary to Congress' intent to protect *473 commerce and not to ban tobacco products. See Food and Drug Admin., 529 U.S. at 138-39, 120 S.Ct. 1291. We view this claim as promoting an "across-the-board, Prohibition-style ban on tobacco products." See Conley v. R.J. Reynolds Tobacco Co., 286 F.Supp.2d 1097, 1107 (N.D.Cal.2002). We, therefore, hold that this claim is barred by conflict preemption. See also Insolia, 128 F.Supp.2d at 1223 (negligence based upon continued sale of product "would run afoul of the congressional policy that the sale of cigarettes is legal").

TWO ISSUE RULE
Davis urges affirmance based on the "two issue rule." We addressed the "two issue rule" in Zimmer, Inc. v. Birnbaum, 758 So.2d 714 (Fla. 4th DCA 2000). In Zimmer, as in, this case, a general verdict form was submitted, without objection, to the jury based on two alternative theories of liability. In that case, again, as in this one, the alternative theories were the "ordinary consumer" test and the "risk benefit" test. The court in Zimmer affirmed the verdict finding it impossible to determine tinder which theory the jury found the defendant liable. The charge to the jury was to determine whether the product was unreasonably dangerous based on the expectations of the ordinary consumer ("ordinary consumer" test) and also, whether the risk caused by the dangers to the ordinary consumer outweighed the benefits received' by them (the "risk benefit" or "risk utility" test). This court acknowledged in Zimmer that the argument that the installer of the' product did not qualify as the "ordinary consumer" was compelling, but because the jury could have found for the appellee on the "risk utility" theory, the second of the two issues, the court affirmed the decision relying on the "two issue rule." Zimmer, 758 So.2d at 715. In Zimmer, just as in the instant case, there were alternative' theories of liability and the court found that the verdict would stand, because at least one of the two theories was legally valid.
More recently, the Fifth District has found that the appellate court may sua sponte raise the "two issue rule" and that a general verdict will be affirmed if there was no error as to one of the issues. Food Lion, L.L.C. v. Henderson, 895 So.2d 1207, 1209 (Fla. 5th DCA 2005).
Liggett acknowledges that there were two design defect theories in the instant case and that the "two issue rule" would apply ordinarily. However, Liggett argues that the "two issue rule" does not preclude reversal because as a directed verdict was required under both tests, as proof of a safer alternative design was required and this proof was not presented. As well, Liggett asserts, the risk utility does not even apply to cigarettes. Clearly, and Liggett does not argue otherwise, if Davis were to prevail under either theory of product liability, the verdict would have to be upheld under the "two issue rule." That is because we cannot determine under which theory the jury found liability. See Zimmer, 758 So.2d 714. We examine each theory and its application separately.

RISK-UTILITY TEST
The RESTATEMENT (SECOND) OF TORTS, section 402A was adopted as the, law of Florida by the Supreme Court in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla.1976). Moreover, the RESTATEMENT (THIRD) OF TORTS has not yet been adopted in Florida. See McConnell v. Union Carbide. Corp., 937 So.2d 148 n. 4 (Fla. 4th DCA 2006) ("We purposefully forbear from any reliance on the Restatement (Third) of Torts and its risk-benefit analysis until the supreme court has recognized it as correctly stating the law of Florida."); Force *474 v. Ford Motor Co., 879 So.2d 103, 107 (Fla. 5th DCA 2004) ("Nevertheless, the Restatement (Third) position has not been adopted by any appellate court in Florida."). Pennsylvania courts have refused to embrace the risk-utility analysis in such situations, See Miller v. Brown & Williamson Tobacco Corp., 679 F.Supp. 485, 489 (E..D.Pa.1988). In Miller, the court held that cigarette claims in an action against a cigarette manufacturer for death caused by cigarette smoking on grounds that cigarettes gave no benefit to society, but imposed great risk could not be maintained.
Liggett asserts that there was not evidence that a safer alternative design was available here which would allow for application of the risk-utility test. We agree that the record was devoid of evidence of a safer design for cigarettes. Further, whether proof of an alternative safer design was required or not, Davis argued strongly in her closing at trial that Liggett should have turned to cigars instead as an "alternative safer design."
As Liggett also correctly points out, the record is devoid of any evidence that Davis would have availed herself of that option or that it would have avoided or lessened her injuries. It is common knowledge and requires no citation or expert testimony to understand that cigars are an entirely different product from cigarettes.
Thus, even assuming that Florida recognized the risk-utility test of the RESTATEMENT (THIRD) OF TORTS, the federal government's pronouncement that the continued manufacture of cigarettes is a sanctioned activity precludes application of this theory to cigarettes. Therefore, the strict liability verdict cannot be upheld under this theory of liability.

ORDINARY CONSUMER TEST
Assuming a directed verdict should have been granted with regard to the risk-utility test, we move to the question of whether the verdict could have been upheld on the second of the general verdict issues, the ordinary consumer expectations test, which has not been specifically tested in Florida state courts with respect to cigarettes. Because the motion for directed verdict was properly denied under the "ordinary consumer" test theory, the verdict should stand.
Liggett makes two arguments. First, that Davis had the burden of presenting evidence that the dangers here were greater than the dangers expected by the ordinary consumer. Liggett claims that there was absolutely no testimony that the dangers of Chesterfield cigarettes were beyond what was expected by the ordinary consumer. Second, Liggett argues that Davis had the duty to present evidence of a safer alternative design, and that there is no evidence of a safer alternative design.
Both sides point to evidence presented during trial which supports their respective positions regarding the "ordinary consumer expectations." Indeed, there is evidence on both sides. And, where there is any evidence from which the finder of fact may reasonably conclude that the non-moving party prevails, that verdict should stand. See Lester's Diner II, Inc. v. Gilliam, 788 So.2d 283, 285 (Fla. 4th DCA 2000). Thus, at least for the years from 1951 to 1968, there is sufficient evidence from which the jury could reasonably have concluded that Davis, as an ordinary consumer, was not aware of the extent of the dangers of the product she was consuming. After 1968, Congress came to recognize, as a matter of law, that warnings should and would be required on cigarette packs manufactured and sold throughout the United States. Though, as Liggett argdes, testimony was presented *475 that the average consumer knew of the dangers before that time, the jury was free to disregard or disbelieve that testimony, and there was testimony from which the jury could reasonably have concluded otherwise. Therefore, this argument favors upholding the verdict.
If there is any evidence to support a verdict for the nonmoving party, a directed verdict is improper. Gilliam 788 So.2d 283. Here, there was evidence presented that at least up until the time Congress addressed the issue of required warnings, the average consumer may not have known of the dangers. And Davis testified that she was one such consumer. The jury was free to accept that testimony. Therefore, the verdict on the "ordinary consumer" theory will not be disturbed.
The question remains whether Florida law requires that a plaintiff prove a safer alternative design and thus the requested jury instruction was improperly denied. We find no case which holds that a plaintiff is required to show a safer alternative design in order to prevail on a strict liability design defect claim. Rather, it appears to be one factor which can be demonstrated and argued to the jury.
Though this particular issue has not been dealt with in Florida, Pennsylvania courts have addressed this question. See Goldstein v. Morris, 854 A.2d 585 (Pa.Super.2004). In 1990, citing to Section 402A Restatement (Second) of Torts, a Pennsylvania court rejected claims that cigarette companies could be held liable merely for, manufacturing a legal and regulated product with inherent risks. Id. at 589 (citing Hite v. R.J. Reynolds Tobacco Co., 396 Pa.Super. 82, 578 A.2d 417 (1990)). In dismissing design defect claims, the Hite court, quoting Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893, 899 (1975), reiterated: "`Section 402A recognizes liability without fault and properly limits such liability to defective products. The seller of a product is not responsible for harm caused by such inherently dangerous products as whiskey or knives that despite perfection in manufacture, design or distribution, can cause injury.'" Hite, 578 A.2d at 420.
As we pointed out earlier, Florida courts have adopted Section 402A of the RESTATEMENT (SECOND) OF TORTS as the standard for product liability in West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla.1976). Product liability cases under Florida law require proof of two things. Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir.1999). First, that the product is defective; and, second, that such defect caused plaintiff's injuries. Id. A product may be defective by virtue of design defect, manufacturing defect, or an inadequate warning. Id. In this instance, we are examining a claim of design defect. However, the question of design defect has been further explained as a defect which renders the product unreasonably dangerous. See id. (emphasis added). The defectiveness issue in both tests at issue is based on an objective standard and not the viewpoint of any particular consumer. Id. (citing Hobart Corp. v. Siegle, 600 So.2d 503, 505 n. 3 (Fla. 3d DCA 1992)). The "normal public expectation of danger" is a consideration in analyzing a claim under the "risk benefit" test and, as well, the ordinary consumer's expectation is a required consideration under the "consumer expectations" test. Hobart, 600 So.2d at 505 n. 3 (citing Auburn Mach. Works Co. v. Jones, 366 So.2d 1167, 1170 (Fla.1979)). Because we find that the risk-utility test is not applicable to the case at hand, we consider this in light of the ordinary consumer test only.
Liggett has asked the court to look to its prior reliance on the RESTATEMENT (THIRD) OF TORTS in defining what defective design *476 is or what constitutes an unreasonably dangerous product. Although we referred to the RESTATEMENT (THIRD) OF TORTS previously in Scheman-Gonzalez v. Saber Manufacturing Co., 816 So.2d 1133, 1139 (Fla. 4th DCA 2002), we did so merely to make the point that "a product is defective in design `when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design' and its omission `renders the product not reasonably safe."' Id. at 1139. We added in Scheman-Gonzakz, that if "a product [wa]s reasonably safe, the fact that there may be a better alternative design is not grounds for product liability." Id. at 1141.
Liggett also cites Husky Industries, Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983), to suggest that a directed verdict should have been granted in the instant case. In Husky, this court reversed a trial court's denial of a directed verdict. There, plaintiff alleged that a manufacturer was strictly liable for damages caused by a product which was allegedly defective because of its color and its failure to have a particular safety "device." Husky, 434 So.2d at 990. The case was reversed because the plaintiff's witness lacked the knowledge and expertise to establish that the product was unreasonably dangerous, particularly where there was evidence that the plaintiff misused the product. Husky, 434 So.2d at 995 n. 11. The misuse in Husky makes the case inapplicable to the case at hand. The court did discuss, albeit in dicta, that there was no testimony that the proposed alternative design would have been safer.
Davis argues that she does not have the duty to present evidence of a safer alternative design in order to prevail against Liggett on a claim of strict liability design defect. This is true in the strictest sense. However, we note that Davis certainly argued in her closing argument that Liggett chose not to make a safer cigarette, but that even if Liggett could not find a safer cigarette, it should have stopped making cigarettes in favor of cigars because they are safer. Because of this, as well as an apparent trend in the law to consider that factor, the safer alternative design language could probably have been included in the jury instructions as a factor to be considered by the jury, had the court exercised its discretion to do so. Liggett requested the following jury instruction be given:
To recover under plaintiffs' theory of liability for design defect, you must further determine (1) whether the alleged injuries plaintiff Beverly Davis sustained as a result of the challenged design for the Liggett Chesterfield cigarettes she smoked would have been avoided, or less severe, had Liggett used a feasible and then available alternative design, (2) whether Beverly Davis would have used the product employing the alternative design instead of the Liggett Chesterfield cigarettes that she did smoke, and (3) that if she had used a product with this alternative design, her injuries would have been avoided.
However, because the court read the Standard Jury Instructions to the jury and the jury instruction proposed by Liggett was not a proper statement of the law as it stood at the time of trial, the court did not err in failing to give the requested instruction.
The standard civil jury instruction for strict liability (design defect) does not include any mention of an alternative design requirement. See Fla. Std. Jury Inst. (Civ.) PL4-PL5 (2004) (FSJI). We have recently held that the standard jury instructions are presumptively correct and should be used unless a party shows the contrary. McConnell, 937 So.2d at 153 *477 (while the standard jury instructions recognize the possibility that even a standard instruction might not accurately state Florida law in a given circumstance, the operating presumption should be that the standard jury instructions are accurate until a litigant makes a showing to the contrary). The instruction proposed by Liggett did not accurately state the law because there is no requirement of an alternative design in a design defect claim. Given the law on jury instructions, there was no error in the trial court's jury instruction.
Affirmed.
WARNER, J., concurs specially with opinion.
GROSS, J., concurs specially with opinion.
WARNER, J., did not participate in oral argument, but has had the opportunity to review the entire proceedings.
WARNER, J., concurring specially.
I concur in the result and agree that the negligent continuing to manufacture claim is barred by conflict preemption. I write separately on the consumer expectation test for the strict liability design defect claim.
The definitions and elements of a cause of action for design defect in the standard instruction are as follows:
A product is unreasonably dangerous because of its design if [the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer] [or] [the risk of danger in the design outweighs the benefits].
Fla. Std. Jury Instr. (Civ.) PL 5 (2004). However, Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), notes that this definition does not work well in design defect cases.
The consumer expectation standard, though adequate to identify unintended manufactured defects, is more difficult to apply as to the other two generally recognized types of product defects: (1) design defects those which are due to design error because unforeseen hazards accompany normal use of the product created according to design, and (2) defects resulting from misinformation or inadequate warnings. As to the last two defects, the standard is said to be a very vague and imprecise one because the ordinary consumer cannot be said to have expectations as to safety regarding many features of complexly made products that are purchased, such as the risk of fire from the way gasoline tanks are installed in cars, or the magnitude of risks involved in vehicles overturning. Due to the difficulty in applying the consumer expectation standard to all types of product defects, many thoughtful commentators' have suggested that it should be rejected, particularly as to those defects arising from design, in favor of a test that would weigh the utility of the design versus the magnitude of the inherent risk.
Id. at 1145 (footnotes omitted). With respect to the manufacture of cigarettes, this standard becomes even more difficult to apply because of the nature of cigarettes. There is no "safe" cigarette. Studies show that all cigarettes are carcinogenic and thus harmful to health. Thus, it is hard to apply the consumer expectation test which involves an expectation that a properly designed form of the product will perform safely, when no cigarette will. Further, as Judge Scola explains, the risk-utility test is inapplicable to cigarettes. Thus, neither test applied in "normal" design defect cases adequately addresses how strict liability *478 should be applied in the case of cigarettes.
Judge Gross notes that comment (i) to the Restatement (Second) of Torts § 402A states that cigarettes are not "unreasonably dangerous" merely because the effects of smoking are harmful. That comment explains that "good tobacco" would not be unreasonably dangerous, whereas tobacco with, for instance, marijuana in it may be unreasonably dangerous, suggesting that the presence of harmful additives changes the result. Here, Davis offered evidence that cigarettes contain many additives which make them more palatable to inhale and thus increase the carcinogenic substances ingested by the body over that which would be ingested by the use of a different product, like a cigar, the smoke of which is not generally inhaled. See, e.g., Philip Morris USA, Inc. v. Arnitz, 933 So.2d 693, 698 (Fla. 2d DCA 2006) (smoker contended that cigarettes had design defect because manufacturer placed additives in cigarettes to make them more inhaleable, that cancer risk was heightened by flue curing of tobacco, and that some additives in cigarettes changed nicotine to free-base nicotine). Apparently, all cigarettes contain such additives. Thus, this would not be a "good tobacco" case. Other courts have also rejected the application of comment (i) as precluding liability. See, e.g., Witherspoon v. Philip Morris Inc., 964 F.Supp. 455, 466 (D.D.C.1997) ("The infamous comment (i) following § 402A appears to be on very shaky ground currently.").[3]
Our supreme court has not as yet adopted any other standard for determining design defect claims for cigarettes. The court has not adopted the Restatement (Third) test requiring an alternative safer design, nor has any Florida case required such proof. We found the Restatement (Third) of Torts "instructive" in Scheman-Gonzalez v. Saber Manufacturing Co., 816 So.2d 1133, 1139 (Fla, 4th DCA 2002). However, whether Florida should adopt the position of this new restatement is an issue that our supreme court should decide. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
Therefore, we look to the consumer expectation test to determine strict liability in this case. As Judge Scola points out, the evidence presented was conflicting on this issue. While Liggett presented a wealth of information that the dangers of smoking were well-known during the period when Davis smoked Chesterfields, the tobacco industry also made a concerted effort to discredit those studies and to allay people's fears. Such efforts were successful, as surveys showed that as of 1970 only 50% of the public believed that smoking would cause ill health. In 1963 only 25% of Chesterfield smokers believed that they should quit smoking to protect their health. From the evidence presented, a jury could conclude that an ordinary consumer of cigarettes would not necessarily expect that smoking would cause cancer or serious health effects during the period before 1974.
Liggett seeks to add to the ordinary consumer expectation test by claiming that Davis must prove that Chesterfield cigarettes were worse than other cigarettes in the tendency to promote cancer (i.e., that the health risks of smoking Chesterfields were different and more injurious than *479 other brands). I do not read the test, or its applications, as requiring a product to be "worse" than the others. Instead, a consumer must show that she had a reasonable expectation that the product would perform in a "safe" manner had it been designed correctly. In a cigarette case, I interpret this as showing that the consumer expects that smoking a cigarette will not cause serious health risks. If my interpretation is wrong, then Liggett may be entitled to a directed verdict on the strict liability case. Davis did not show that Chesterfields were more likely to produce cancer than other cigarettes, nor did she show that smoking other cigarettes would not have caused her cancer. Her experts presented no evidence that Chesterfields brought on cancer sooner than had she smoked another brand or that she would have avoided it entirely with another brand.
In sum, I think the jury verdict finding strict liability may be upheld on the consumer expectation test theory. I do not agree with Judge Gross, however, that Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), gave a "green light" to strict liability design defect claims. This issue was not discussed in the Engle case, and the issues there involved claims of fraudulent misrepresentation (a claim not alleged by Davis), rather than strict liability. Although issues regarding strict liability were present at the trial court level in Engle, they were not addressed by either the Third District or the supreme court. Therefore, I would certify to the supreme court the question of whether Florida should adopt the Restatement (Third) of Torts for design defect cases. If an alternative safer design is essential to a claim of design defect, then I believe that Liggett would be entitled to a directed verdict.
GROSS, J., concurring specially.
I concur with Judge Hogan Scola's opinion based on the evolution of products liability law in the last 30 years, most recently demonstrated in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), where the supreme court apparently gave the green light for causes of action such as those in this case. I write only to point out that if this case were strictly controlled by the comments to that section of the Restatement adopted by the supreme court in 1976, the trial court should have granted a directed verdict on the products liability/design defect count.
West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), adopted section 402A of the RESTATEMENT (SECOND) OF TORTS. That section provides:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Comment i to section 402A emphasized that it must be the defective condition of a product that makes it "unreasonably dangerous." Thus, to fall under section 402A, a product *480 must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.
RESTATEMENT (SECOND) OF TORTS 402A, cmt. i (1965) (emphasis added). The requirement that a defect be "unreasonably dangerous" was added to the section "to foreclose the possibility that makers of products having the inherent potentiality for causing harm, such as drugs, whiskey, sugar, butter, etc., would become automatically responsible for all the harm that such things do in the world." Cassisi, 396 So.2d at 1144 (citation omitted). Thus only "bad" tobacco should be subject to the section 402A standard. See id.
We applied the principles of comment i in Coulson v. DeAngelo, 493 So.2d 98, 99 (Fla. 4th DCA 1986), a case involving a handgun "solely used for the commission of criminal acts." We affirmed a dismissal of the plaintiff's section 402A claim for failure to state a cause of action, recognizing that the "essence of the doctrine of strict liability for a defective condition is that the product reaches the consumer with something `wrong' with it." Id. We reasoned that "it was the use of the gun that made it defective" or unreasonably dangerous, "not that it malfunctioned or had a faulty design." Id. See also Todd v. Societe BIC, S.A., 9 F.3d 1216, 1219-20 (7th Cir.1993) (quoting Hunt v. Blasius, 74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368, 372 (1978)); Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 236 (6th Cir.1988); Gianitsis v. Am. Brands, Inc., 685 F.Supp. 853, 858 (D.N.H.1988); Miller v. Brown & Williamson Tobacco Corp., 679 F.Supp. 485, 488 (E.D.Pa.1988). The evidence at trial about tobacco additives did not turn this into a "good tobacco" case. My understanding of the evidence was that the additives made tobacco easier to inhale, not that the additive synergistically reacted with the cancer-causing chemicals in tobacco.
After deciding West, Florida courts have given little guidance as to the mechanics of handling the jury trial of a strict liability design defect. The supreme court has approved a jury instruction defining the term "unreasonably dangerous" by two alternative tests, the consumer-expectation test and the risk-utility test. See Standard Jury InstructionsCivil Cases, 872 So.2d 893 (Fla.2004). We know from Radiation Technology, Inc. v. Ware Construction Co., 445 So.2d 329, 331 (Fla.1983), that the "term `unreasonably dangerous'" requires the balancing of a number of factors:
the likelihood and gravity of potential injury against the utility of the product, the availability of other, safer products to meet the same need, the obviousness of the danger, public knowledge and expectation of the danger, the adequacy of instructions and warnings on safe use, and the ability to eliminate or minimize the danger without seriously impairing the product or making it unduly expensive.
How and when a jury is made aware of these factors is unclear. There may be cases where the consumer-expectation test is not suitable for the evaluation of a complex product. See Force v. Ford Motor Co., 879 So.2d 103, 106-07 (Fla. 5th DCA 2004). The propriety of either test for a *481 given product will apparently be decided on a case by case basis.
NOTES
[1] Ms. Davis' husband, Alan Davis, was a plaintiff below. All verdicts with regard to Mr. Davis were in favor of Liggett and Mr. Davis did not cross-appeal these verdicts.
[2] Though six (6) interrogatories were submitted to the jury, only two (2) were decided in favor of the Davises.
[3] In Wright v. Brooke Group Ltd., 652 N.W.2d 159 (Iowa 2002), the Iowa Supreme Court was asked in a certified question whether the cigarette company defendants in a design defect case could rely on comment (i) of the Restatement to show that cigarettes were not unreasonably dangerous. The court decided to adopt the Restatement (Third) as the law of Iowa for product defect cases, rendering comment (i) inapplicable.