AUBIN’S MOTION FOR REHEARING OR CERTIFICATION

I. Aubin’s Motion for Rehearing

In his motion for rehearing, Aubin argues that this Court overlooked record *903 evidence establishing that SG-210 Calidria is more dangerous than raw chrysotile asbestos with respect to the contraction of mesothelioma. Aubin notes that Union Carbide’s proprietary manufacturing process “removed impurities” from the raw chrysotile asbestos, and, as a result, yielded a “more pure” form of chrysotile asbestos. Aubin argues that the increased purity of SG-210 Calidria caused it to be more dangerous than raw chrysotile asbestos with respect to the contraction of mesothe-lioma. We disagree with Aubin’s circular reasoning.
“Pure” means “containing no added, substitute, or foreign substance.” Webster’s Third New International Dictionary 1845 (1986). Thus, Aubin is correct in noting that, by extracting impurities — or “foreign substances” — from the raw chry-sotile asbestos, Union Carbide’s proprietary manufacturing process made the raw chrysotile asbestos more pure. Our focus, however, is not on the foreign substances removed, which, by definition, are separate and distinct from the raw chrysotile asbestos. Our focus is on the raw chrysotile asbestos itself. And, as we have explained, Aubin presented no evidence establishing, or allowing for the inference, that Union Carbide’s proprietary manufacturing process altered the raw chrysotile asbestos in any way that enhanced its carcinogenic effects.

II. Aubin’s Motion to Certify Direct Conflict

Aubin also argues that our decision to reverse his design defect claim, and our determination that the trial court’s jury instructions were misleading, directly conflict with case law from the Fourth District, which adheres to the Second Restatement. Thus, Aubin urges this Court to certify conflict. We decline his invitation.
First, with respect to Aubin’s design defect claim, we recognize that the standards governing whether a product suffers from a design defect are different under the Second Restatement and Third Restatement. Under the Second Restatement, this issue is governed by the “consumer expectations” standard, while under the Third Restatement, it is governed by the “risk-utility/risk-benefit” standard. See Agrofollajes, 48 So.Bd at 997. However, our reversal of Aubin’s design defect claim is not based on any discrepancy between these two standards. In fact, we expressly determined that Aubin presented sufficient evidence to reach the trier of fact on whether SG-210 Calidria was a “designed” product, and whether its purported design was defective. We are reversing Aubin’s design defect claim because he did not present any evidence showing that SG-210 Calidria’s purported design defect — as opposed to its basic, raw, and naturally occurring characteristics — caused his harm. This requirement is identical under the Second Restatement and the Third Restatement. See Liggett Group, Inc. v. Davis, 973 So.2d 467, 475 (Fla. 4th DCA 2007) (holding that under the Second Restatement, plaintiffs must demonstrate two things: “[f]irst, that the product is defective; and, second, that such defect caused plaintiffs injuries.”) (emphasis added).
In addition, our determination that the jury instructions in this case were misleading is based on legal principles that are materially the same under both the Second Restatement and the Third Restatement. As we have explained, in Kavanaugh, which is still good law, the Fourth District applied Section 388 of the Second Restatement in evaluating whether Union Carbide, as a bulk supplier of asbestos, had a duty to directly warn the end-users of its product’s dangers. Kavanaugh, 879 So.2d at 44. The Kavanaugh court’s analysis *904 mirrored our own. Applying the Second Restatement, the Kavanaugh court agreed, in conformity with a long series of Florida cases,[5] that whether Union Carbide had discharged its duty to warn end-users by adequately warning the intermediary manufacturers, and reasonably relying on them to warn the end-users, is a factual determination for the jury to decide. Id. at 45 (“In this case, it was for the jury to determine the adequacy of [Union Carbide’s] warnings to Georgia-Pacific and whether, based on the sufficiency of the warnings given, [Union Carbide] still owed Kavanaugh a duty.”).[6] Further, the Kavanaugh court articulated several factors for the jury to consider when making this determination, and these factors are essentially the same as those set forth in the Third Restatement. See id. (holding that “[fjactors to be taken into consideration when determining whether a supplier has discharged its duty to warn the ultimate user of its product include: 1) the dangerous nature of the product; 2) the form in which the product is used; 3) the intensity and form of the warnings given; 4) the burdens to be imposed by requiring warnings; and 5) the likelihood that the warnings will be adequately communicated to the foreseeable users of the product.”); see also Restatement (Third) of Torts: Products Liability § 2 cmt. i. (stating that “[a]mong the factors to be considered” by the trier of fact in determining whether a manufacturer has a duty to warn end-users are: (1) “the gravity of the risks posed by the product”; (2) “the likelihood that the intermediary will convey the information to the ultimate user”; and (3) “the feasibility and effectiveness of giving a warning directly to the user.”). Thus, because the jury instructions did not inform the jury that Union Carbide could have discharged its duty to warn end-users by adequately warning the intermediary manufacturers, and reasonably relying on them to warn end-users, they were misleading under both the Third Restatement and the Second Restatement.
For these reasons, we decline to certify direct conflict.
Affirmed, in part; reversed, in part; remanded for a new trial; motion for rehearing or certification denied.

. See Brito, 753 So.2d at 112 (quoting Felix, 540 So.2d at 104).

. To the extent the trial court may have relied on the Fourth District's decision in McConnell, its reliance was misplaced because the McConnell court’s reading of the Kavanaugh court's holding was flawed. For example, the McConnell court concluded that the Kava-naugh court held "that the 'learned intermediary’ exception is not applicable to Calidria Asbestos and Ready-Mix with its hidden measure of asbestos." McConnell, 937 So.2d at 156. The Kavanaugh court, however, made no such finding. The Kavanaugh court concluded that it was for the jury to weigh whether the warnings provided to the manufacturer who integrated Union Carbide’s product were adequate and whether Union Carbide discharged its duty to end-users. It also appears that the McConnell court may have transformed the affirmation of the jury's determination in Kavanaugh into a legal holding to be applied in all future cases involving Calidria asbestos. Because such a holding would effectively preclude Union Carbide from litigating against future plaintiffs as to whether its reliance on intermediaries was reasonable, it comes perilously close to application of non-mutual, offensive collateral es-toppel, which is impermissible in Florida. E.C. v. Katz, 731 So.2d 1268, 1269 (Fla. 1999) (quoting Stogniew v. McQueen, 656 So.2d 917, 919 (Fla.1995)). In any event, the McConnell court neither receded from nor overruled Ka-vanaugh. As such, Kavanaugh, which is consistent with our analysis in this case, is still good law.